

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.

D-1 Omar Rashad Pouncy,
D-2 Jaakawa McGruder,
  a.k.a. "Jaawkawa," "Jaak," "Yaak,"
  "the realtor,"
D-3 Rashad Shahid,

    Defendants.

Case: 4:23-cr-20262
Judge: Kumar, Shalina D.
MJ: Ivy, Curtis
Filed: 05-03-2023
V  INDI USA v. POUNCY, et al (tt)
18 U.S.C. § 371
18 U.S.C. § 1512(k)
18 U.S.C. § 1512(b)(1)
18 U.S.C. § 201(b)(3)
18 U.S.C. § 201(b)(4)
18 U.S.C. § 1622
18 U.S.C. § 1623(a)

**INDICTMENT**

F I L E D
MAY 0 3 2023
U.S. DISTRICT COURT
FLINT, MICHIGAN

THE GRAND JURY CHARGES:

**GENERAL ALLEGATIONS**

1.    At all times relevant to this Indictment:

2.    In 2005, the State of Michigan charged D-1 Omar Rashad Pouncy and two other men with three carjackings that occurred in September and October of 2005. As pertinent here, Pouncy proceeded to trial on two of the carjackings, including a carjacking that took place on October 11, 2005. A jury found Pouncy guilty of the two carjackings, and the state court sentenced him to prison. One of the other carjackers pleaded guilty and testified against Pouncy at the trial. Another carjacker, whose identity is known to the grand jury and who is identified here as

1

Individual A, pleaded guilty after Pouncy's trial to being an accessory after the fact

to the carjacking. At Individual A's plea hearing, Individual A testified under oath

that he, Pouncy, and the other carjacker committed the carjacking on October 11,

2005.

      3.     In November 2013, Pouncy filed a federal habeas corpus petition in

the Eastern District of Michigan in the case *Pouncy v. Palmer*, Case No. 13-cv-

14695. In this petition, Pouncy claimed that he was actually innocent of the

carjackings for which he had been convicted, and that another individual, D-2

Jaakawa McGruder, had committed the carjackings with Individual A and the other

man.

      4.     On or about October 15, 2015, in support of his federal habeas corpus

petition, Pouncy submitted to the Court an affidavit dated October 4, 2014, that

was purportedly signed by McGruder and that implicated McGruder with respect

to the state carjacking.

      5.     On or about January 26, 2018, in support of his federal habeas corpus

petition, Pouncy submitted to the Court an affidavit dated April 18, 2016, and an

affidavit dated January 4, 2018, that were purportedly signed by McGruder and by

Individual A, respectively. Both affidavits stated that McGruder had committed the

carjackings with Individual A and the other man, and that Pouncy did not

participate in the carjackings.

6.     Beginning at a time unknown that was prior to on or about March 7, 2018, Pouncy devised a scheme to elicit, in conspiracy with others, false statements and false testimony in the case of *Pouncy v. Palmer*, Case No. 13-cv-14695, in the United States District Court for the Eastern District of Michigan, and to obstruct justice, in order to secure his release from state prison, including by prevailing on his actual innocence claims in his federal habeas case.

7.     On or about March 7, 2018, Pouncy called D-3 Rashad Shahid on a recorded prison telephone line and asked Shahid to contact *"the realtor"* to see if they could *"close on the house."*

8.     On or about March 13, 2018, Pouncy called Shahid on a recorded prison telephone line, and Shahid recommended that Pouncy *"put a down payment on the crib so you don't lose it."* Pouncy asked Shahid, *"what ole girl daddy want, like, a band right now?"* Shahid said, *"Yeah, just a band to hold it."* A "band" is a commonly used term meaning $1,000.

9.     On or about March 16, 2018, Pouncy called Shahid on a recorded prison telephone line and asked Shahid, *"did that realtor seem satisfied with that 1000?"* to which Shahid responded, *"yeah, he did."*

10.    On or about March 18, 2018, Shahid sent $1,000 to McGruder through the Walmart-to-Walmart payment system, which allows an individual to

3

send money from one Walmart location that another individual can then pick up at
another Walmart location.

11.     On or about March 22, 2018, Shahid sent $500 to McGruder through
the Walmart-to-Walmart payment system.

12.     On or about March 25, 2018, Pouncy called Shahid on a recorded
prison telephone line and asked Shahid, *"what was the verdict with the realtor?"*
Shahid said, *"I think he still go through with it though,"* and *"he ain't gone turn
down the money."*

13.     On or about March 26, 2018, Pouncy called Shahid on a recorded
prison telephone line and said, *"I am lost on what the realtor want, man, but, um,
my thing was that he was gonna give you the deed . . . once you give him 25 more
hundred, then he was gonna give you the – sign the bitch over later and you give
him the other 5."*

14.     On or about April 2, 2018, while in prison, Pouncy used a contraband
cellular telephone to send a text message to Shahid, which said, *"Cuz text me the
realtor's # asap."* Shahid texted Pouncy the number ███-███-6674, which was
McGruder's number.

15.     Also on or about April 2, 2018, Pouncy texted McGruder, *"Hit me
back asap $$$$."* McGruder responded, *"Who is this,"* to which Pouncy responded,

"*Ur cuz n\*\*\*\* call me asap.*" McGruder asked, "*What's the deal,*" and Pouncy responded, "*Cuz if I take care of my part do I have ur guarantee?*"

16.     On or about April 4, 2018, McGruder texted Pouncy, "*What's The Deal.*" McGruder responded, "*Just come threw in time so U can Go over All the Paperwork only need to know what kind gun,  And Cars / Witch I see cars in some paper work.*" During the same conversation, Pouncy texted McGruder, "*The checks should be cleared 2morrow no later than Friday. We need 2 chop it up tho.*" Pouncy also stated, "*I'll hit u @ 10 tomorrow. But if that cash clear lil cuz will PayPal u before then.*" McGruder then responded, "*No PayPal, shit take too long / Walmart to Walmart,*" and Pouncy agreed, "*Alrite tell lil cuz.*"

17.     On or about April 4, 2018, Shahid sent $2,500 to McGruder through the Walmart-to-Walmart payment system.

18.     On or about April 7, 2018, Pouncy texted McGruder, "*Alrite cuz. Dont let them know we're talkn / To each other,*" and McGruder responded, "*I know.*"

19.     On or about April 9, 2018, Pouncy texted McGruder, saying "*Cuz I talked 2 the lawyers they said 'you would make a great witness.*'"

20.     On or about April 9, 2018, Pouncy called another person on a recorded prison call and stated, "*it all depends on this guy's level of prep, uh, preparedness, the witness, the level of preparedness, you know what I mean?*

*'Cause it's going to boil down to credibility. So he, his lawyer and my lawyer flew down there to meet with him to make sure he prepared to testify. 'Cause he can't just go in there and say, yeah it was me, and it wasn't Omar, you know what I mean? He gotta remember the details of what he did, and why he did it, and how he did it, and when he did it, you know what I mean? 'Cause that's what it boil down to – credibility. So that's what all my energy been to. . . ."*

21.    On or about May 3, 2018, the district court set an evidentiary hearing in Pouncy's habeas corpus proceeding for May 22, 2018.

22.    On or about May 13, 2018, McGruder texted Pouncy, stating:

> *You too much of a Risk for me cuz Either have rest of money to me before I fly out,  Or I'm Not flying out.  You risk your own life and them N\*\*\*\*s around you for what? IDK but I'm not openly letting you play with mine.*
>
> *and Talk to cuz He Said you got it when You saying he got it.*
>
> *Cuz You know I will Flip the whole damn scrip, if I walk out that place and my shot ain't where it pose to be,*
>
> *But To Get Rid of that Thought, Have It Sent On 19th no later and my Flight leave the 20th*
>
> *No 19th, no 20th.*

23.    On or about May 13, 2018, Pouncy used the contraband cellular telephone to send a text message to Individual A. Pouncy's message stated, "*Cuz holla at this n\*\*\*\* jaak he just got on sum bullshit.*" Pouncy also sent Individual A screenshots of McGruder's text messages to Pouncy. Individual A responded to

Pouncy, saying "*Send me his number.*" Pouncy stated, "*That n**** got me hot i done gave this n**** 5k and he tryn 2 renege.*" Pouncy then texted Individual A the number for McGruder.

24.     Also on or about May 13, 2018, Pouncy used the contraband cellular telephone to text a person whose identity is known to the grand jury and who is identified here as Individual B. In the text, Pouncy asked Individual B, "*Bestie do u have that money in the safe or the bank.*" Individual B replied, "*Smdh in the bank and you can't trust to give him the whole thang as much as he flip flop what's gone make him come through after that ?*" to which Pouncy replied, "*Screen shot ur account balance so I can show him we got the money.*"

25.     Also on or about May 13, 2018, Pouncy used the contraband cellular telephone to send a text message to McGruder, stating:

> *If u reneging just give me that 5k i already gave u. N**** u playn it foul. U doing wat u do aint got shit 2 wit wat I'm doing i aint give u 5k for no reason. We need 2 stick 2 the plan lil cuz going t showu the $ the day of court and smash it on u rite wen u get off the stand. N**** I'm not giving up no 10k for nothing. . . . We doing business i aint gettn extorted. At the end of the day I'm coming home regardless I'm just tryn 2 set this shit up 4 my lawsuit. But if u reneging just let me know so i can email my attorneys asap so i can get a closer date and so they won't have 2 pay for that flight.*
>
> *I'll have the money given 2 u at the court house I'm not comin off no more money b4 then*
>
> *Or I'll have it sent to a lawyer down there with the agreement dat they dont turn it over til i confirm u testified*

> *And I gave u that 5k as a down payment 4 testifying u talkn 2 my lawyers aint goin 2 get me home* [Individual B] *testifying 4 free. I'll give the $ 2 him 2 give t u or 2* [redacted name]
>
> *Now u dont want 2 answer just send me my 5k back asap. I hope we dont fall out over u gettn on no hoe shit. Business is handle with n****s stickn 2 the plan i can kill myself 2day n**** u still obligated 2 stick 2 the plan I KNEW U WAS GOING 2 GET ON SUM THIRSTY SHIT LIKE THIS.*

26.     Also on or about May 13, 2018, Individual A sent Pouncy a text message, stating, "*Just give me the rest I'm gonna hold it into it's over.*" Individual A also sent Pouncy screenshots of communications with McGruder on Facebook Messenger, where McGruder was identified as "Yaak McGruder." In these messages, McGruder stated:

> *He Must Have Messaged you, So That Mean All this Shit Off Cuz He Don't Got My Mufuckin Money,*
>
> *Like O Told His Bitch Ass If I did the Shot And Got Caught, N******* I'd Seat My Ass Down Humbled, Not Trying To Even Put My Family In that Shit.*

Individual A responded:

> *Tht N**** is gonna pay you he worried about you doing what you say you gonna do he gonna give the money to me I'll hold it and soon ass you leave out tht mf I'll be right there with yo money and you go back to living yo life.*
>
> *Bro you think I'll let tht N**** play you.*

27.     Also on or about May 13, 2018, Pouncy sent a text to Individual A, stating, "*He say he was just playn and he going 2 do it so good look cuz this n*****

8

*play 2 fuckn much.*" Individual A responded, "*I got you just dnt play him cuz.*" Pouncy responded, "*Cuz on my granny I'm not that shot aint shit i already gave him 5k.*"

28.    Also on or about May 13, 2018, Pouncy sent Individual B a screen shot of a Facebook Messenger exchange between Pouncy and McGruder. In that exchange, Pouncy stated, "*Alriye2 n\*\*\*\* we nine days away they got 3 give me $50,000.00 for each year so that's $650,000 not including the lawsuit money. They just passed the 'WRONGFUL IMPRISONMENT COMPENSATION ACT IN MICHIGAN' google it and read it. U know I'm going 2 break* [bread emoji]*.*"

29.    On or about May 20, 2018, at 12:59am, McGruder texted Pouncy the address of the Holiday Inn at 5353 Gateway Centre, Flint, MI.

30.    Also on or about May 20, 2018, Pouncy texted the same address to Individual B. Individual B texted Pouncy, "*Do I suppose to be taking him any or just showing him?*"

31.    On or about May 21, 2018, Pouncy's attorneys went to the Holiday Inn and met with McGruder.

32.    Also on or about May 21, 2018, McGruder texted Pouncy, "*We need to talk about all this Shit set by set on what happen,  shit they asking I don't know.*"

33.    On or about May 22, 2018, at around 6:16 a.m., McGruder texted Pouncy to say that he had not received a call from Pouncy. Pouncy stated that "*It*

was going straight 2 voicemail I had like 3 ppl call u guess phone was dead."

McGruder responded, "Yes call me like 8am refresh of everything."

34. Also on or about May 22, 2018, McGruder texted Pouncy,

"[Individual B] gone be here on time right," to which Pouncy replied, "Yes she got

u." McGruder said, "I hope so I got more shit to clear up here / I could get

arrested, I need money asap." Pouncy replied, "The Attorney General's office

GUARANTEED the Federal judge that they will NOT arrest u. So [Individual B]

will b their and have the $ ass soon as u get done testifying. Cuz we sticking 2 da

stricpt or wat."

35. On or about May 22, 2018, starting at around 6:55 a.m., Pouncy sent

McGruder three text messages detailing the carjackings, stating:

> (6:55 a.m.) Yeah the 1st carjacking happened in Burton it involved
> the Green older Monte Carlo. You test drove tge car two different
> times with 2 different guys and the 2nd time u carjacked him at gun
> point. They only saw u but [the third carjacker] and [Individual A]
> was in the car waitn on u
>
> (7:18 a.m.) The 2nd one involved the goldish Camaro. Y'all were
> out riding You [the third carjacker] and [Individual A]on Richfield
> rd and saw a souped up race Camaro 4 sale outside of a racecar
> fabrication shop u got out that nite and approached the place of
> business where it was setup 4 sale at and u realized that it was sum1
> u knew from being at the race tracks with [redacted name]. The guys
> name was [redacted name] and he said u looked familiar 2 him that's
> when u told him ur name was Jacob Wood [redacted-name]'s lil
> brother. From there he told u that u could come back the next day
> to test drive the car and have ur mechanic look at it. Y'all u [the
> third carjacker] and [Individual A] left came back the next day and
> two more guys were there along with [redacted name] the guy u

*know from the race track. Yall left, stopped at a gas station on carpenter and dort hwy then yall headed over to Keller Rd at the deadend. It were sum ppl outside next door working on the house. Yall got out the car* [the third carjacker] *pulled the gun out told the ppl (it was only 2 of them* [redacted name] *did NOT cum with yall) to give him the keys and the title the two ppl refused* [the third carjacker] *shot the gun by surprise it was so close to u ur ears rang and then he forced them into the woods. You hopped in the truck and* [the third carjacker] *and* [Individual A] *left in* [the third carjacker] *'s car.*

*(7:34 a.m.) The 3rd one involved the White Cadillac and Red Corvette. Y'all seen a car advertised 4sell in the newspaper y'all called 2 schedule a test drive. The owners said come the next day. The next day you called them back to set up the test drive. Y'all drove all the way to Fenton to the ppls house. Yall got lost several times so you kept calling them back 4 directions. Yall finally arrived. You got out met the husband and wife u got in the car with the husband. You were in the driver seat. The husband was in the passenger seat.* [the third carjacker] *and* [Individual A] *stayed in* [the third carjacker] *'s car. The wife got into a red corvette. Yall traveled to Mr. Morris. Y'all stopped at a gas station on the corner of Clio and Coldwater then yall headed 2 the same deadend road at the last house on the right. This time someone was home, u ensure that u would not alarm them inside the home u went up 2 the door and 1st one black male came to the door. U asked to mow the lawn, he said wait so he could get the owner then another older black male came 2 the door u asked him if u could cut the grass. He declined ur offer. You left went back out to the car pulled the gun out told the white male to get out  the car and to give u the title. You walked hom to the road where his wife was told hee to get out the car. She got out you tooj the keys and told them to get in the woods. They walked in the woods.* [The third carjacker] *got out of his car jumped in the corvette and sped off* [Individual A] *left in* [the third carjacker] *'s car and u jumped back in the Cadillac and left.*

36.     Also on or about May 22, 2018, after receiving these messages,

McGruder texted, *"OK so I was driving the white car,"* and Pouncy responded,

"*Cadillac yes.*" McGruder continued, "*The Truck with gold car and motty /
Monty.*"

37.     On or about May 22, 2018, an evidentiary hearing took place in the
U.S. District Court for the Eastern District of Michigan in *Pouncy v. Palmer*.
During that hearing, Pouncy, who was represented by counsel, called McGruder as
a witness. McGruder appeared in the U.S. District Court for the Eastern District of
Michigan. McGruder was placed under oath and testified, including that:

        a.  McGruder had committed the carjackings for which Pouncy
            had been convicted, including the carjacking that took place on
            the evening of October 11, 2005. McGruder committed the
            carjackings with Individual A and the other carjacker, and
            Pouncy was not involved.

        b.  No one had told McGruder how to testify at the hearing on May
            22, 2018.

        c.  McGruder was not receiving any money for his testimony, and
            he had never been offered any payments for his testimony.

38.     At the time of the carjacking on October 11, 2005, McGruder was in
police custody on an unrelated matter.

39.     On or about May 29, 2018, the State of Michigan filed a copy of the
transcript from Individual A's plea hearing, in which Individual A had testified

under oath that he, Pouncy, and the third carjacker had committed the carjacking that occurred on October 11, 2005. Later on May 29, 2018, Pouncy emailed Individual A a copy of the transcript and also stated, *"Cuz they just gave us this and tryn 2 use it against me we got tp clean this up. My name all thru this shit."* Pouncy also told Individual A, *"Lawyers don't know nothing bout a play / Just tell then straight up I had nothing 2 do with it."*

40.     On or about May 30, 2018, Pouncy sent an email to Shahid. The email was written in the first person as if authored by Shahid. The email was addressed to one of Pouncy's attorneys, and purportedly signed with Shahid's name. In the email, Pouncy had Shahid deny that McGruder asked for money for his testimony or that Pouncy offered McGruder money for testimony. Pouncy also had Shahid state that Shahid asked Pouncy for $20,000, pretending it was a demand from McGruder, when in reality Shahid intended to keep the money for himself.

41.     On or about May 31, 2019, the State of Michigan submitted a motion in Pouncy's federal habeas case and alleged that Pouncy had suborned perjury during the evidentiary hearing on May 22, 2018.

42.     On or about July 27, 2019, Pouncy called Individual B on a recorded prison telephone line. Pouncy told Individual B that everyone only thought it was Pouncy that had been contacting them with respect to Pouncy's hearing, but in reality, it was someone else impersonating Pouncy, and that was why they had

13

acted the way they had regarding the hearing. Pouncy instructed Individual B that

this impersonator was the reason why they wanted Pouncy to give McGruder

money, "*so that is why I got y'all explaining that, that y'all thought it was me, and

it wasn't you know.*" Pouncy stated that he would prove that he wasn't the one

sending the text messages, because Pouncy allegedly "[couldn't] *get a cellphone

signal in that cell.*"

**COUNT ONE**
**Conspiracy to Obstruct Justice, Suborn Perjury, and Commit Perjury**
**18 U.S.C. § 371**

D-1 Omar Rashad Pouncy
D-2 Jaakawa McGruder
D-3 Rashad Shahid

43.     The allegations in paragraphs 1 through 42 are hereby realleged and

incorporated into this count by reference.

44.     Beginning at a time unknown and continuing until approximately July

27, 2019, in the Eastern District of Michigan and elsewhere, defendants, D-1 Omar

Rashad Pouncy, D-2 Jaakawa McGruder, and D-3 Rashad Shahid, knowingly and

willfully conspired and agreed together and with each other and with other

individuals, both known and unknown to the Grand Jury, to commit the following

offenses against the United States:

      a.  To corruptly give, offer, and promise, directly and indirectly,

         anything of value to another person, with intent to influence the

14

testimony under oath and affirmation of that other person as a witness upon a hearing and other proceeding before a court, in the case of *Pouncy v. Palmer*, Case No. 13-cv-14695, in the United States District Court for the Eastern District of Michigan, in violation of Title 18, United States Code, Section 201(b)(3);

b. To corruptly demand, seek, receive, accept, and agree to receive and accept, directly and indirectly, anything of value personally and for any other person, in return for being influenced in testimony under oath and affirmation as a witness upon any such hearing, and other proceeding, in violation of Title 18, United States Code, Section 201(b)(4);

c. To procure another to commit any perjury, in violation of Title 18, United States Code, Section 1622;

d. To make a false material declaration under oath, and in any declaration and statement under penalty of perjury, in a proceeding before and ancillary to a court of the United States, that is, in connection with the case of *Pouncy v. Palmer*, Case No. 13-cv-14695, in the United States District Court for the

Eastern District of Michigan, in violation of Title 18, United States Code, Section 1623(a).

## Object of the Conspiracy

45.   The objective of the conspiracy was for Omar Pouncy to be released from state prison by prevailing on actual innocence claims in his federal habeas case.

## Manner and Means of the Conspiracy

46.   It was part of the conspiracy for defendants and their co-conspirators to agree to pay McGruder, and for McGruder to agree to accept, $10,000 in order to influence McGruder's testimony in the United States District Court for the Eastern District of Michigan in *Pouncy v. Palmer*, Case No. 13-cv-14695.

47.   It was also part of the conspiracy that defendants agreed for McGruder to make material false statements under oath in the United States District Court for the Eastern District of Michigan in *Pouncy v. Palmer*, Case No. 13-cv-14695, in an attempt to secure Pouncy's release from state prison by prevailing on his actual innocence claims in that case.

16

### Overt Acts

48.     In furtherance of the conspiracy and to effect the object of the
conspiracy, defendants and other co-conspirators committed the following overt
acts, among others, in the Eastern District of Michigan, and elsewhere:

    a. On or about October 15, 2015, in support of his federal habeas
       corpus petition, Pouncy submitted to the Court an affidavit
       dated October 4, 2014, that was purportedly signed by
       McGruder and that implicated McGruder with respect to the
       state carjacking.

    b. On or about January 26, 2018, in support of his federal habeas
       corpus petition, Pouncy submitted to the Court an affidavit
       dated April 18, 2016, and an affidavit dated January 4, 2018,
       that were purportedly signed by McGruder and by Individual A,
       respectively. Both affidavits stated that McGruder had
       committed the carjackings with Individual A and the other man,
       and that Pouncy did not participate in the carjackings.

    c. On or about March 18, 2018, Shahid sent McGruder $1,000 in
       payment for his false testimony in support of Pouncy's claim of
       actual innocence.

d. On or about March 22, 2018, Shahid sent McGruder $500 in payment for his false testimony in support of Pouncy's claim of actual innocence.

e. On or about April 4, 2018, Shahid sent McGruder $2,500 in payment for his false testimony in support of Pouncy's claim of actual innocence.

f. Between approximately April 2, 2018, and approximately May 22, 2018, Pouncy and McGruder agreed to arrangements to pay McGruder $10,000 for his false testimony.

g. Between approximately April 2, 2018, and approximately May 22, 2018, Pouncy and McGruder prepared McGruder to testify falsely at Pouncy's hearing.

h. Between approximately May 20, 2018, and approximately May 22, 2018, Individual B provided $5,000 to McGruder for his false testimony.

i. On or about May 22, 2018, McGruder appeared in the United States District Court for the Eastern District of Michigan and falsely testified that McGruder, and not Pouncy, had committed the carjackings of which Pouncy had been convicted; that no one had told McGruder how to testify at the hearing; and that

McGruder was not receiving any money for his testimony and had never been offered any payments for his testimony.

j.  On or about May 29, 2018, Pouncy emailed Individual A a copy of Individual A's plea transcript, which implicated Pouncy. Pouncy told Individual A that they had to "clean this up," and that Individual A should tell Pouncy's lawyers that Pouncy had nothing to do with the carjacking.

k.  On or about May 30, 2018, Pouncy sent an email to Shahid with the intent that Shahid would contact Pouncy's lawyers and tell them that Shahid had requested money from Pouncy for himself, and not for McGruder.

l.  On or about July 27, 2019, Pouncy instructed Individual B that it was someone impersonating Pouncy, not Pouncy himself, that had been contacting them about Pouncy's hearing.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Conspiracy to Tamper with a Witness
### 18 U.S.C. § 1512(k)

D-1 Omar Rashad Pouncy
D-2 Jaakawa McGruder
D-3 Rashad Shahid

49.     The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

50.     Beginning at a time unknown and continuing until approximately May 22, 2018, in the Eastern District of Michigan, and elsewhere, defendants, D-1 Omar Rashad Pouncy, D-2 Jaakawa McGruder, and D-3 Rashad Shahid, knowingly and willfully conspired and agreed together and with each other and with other individuals, both known and unknown to the Grand Jury, to knowingly and corruptly persuade McGruder, with intent to influence McGruder's testimony in an official proceeding, that is, the case of *Pouncy v. Palmer*, Case No. 13-cv-14695, in the United States District Court for the Eastern District of Michigan, in violation of Title 18, United States Code, Section 1512(b)(1), when they conspired together to have McGruder testify falsely in that official proceeding in exchange for payment, to support Pouncy's claim of actual innocence.

All in violation of Title 18, United States Code, Section 1512(k).

20

## COUNT THREE
### Tampering with a Witness
### 18 U.S.C. § 1512(b)(1)

D-1 Omar Rashad Pouncy
D-3 Rashad Shahid

51.    The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

52.    Beginning at a time unknown and continuing until on or about May 22, 2018, in the Eastern District of Michigan and elsewhere, defendants, D-1 Omar Rashad Pouncy and D-3 Rashad Shahid, knowingly and corruptly persuaded McGruder, with the intent to influence McGruder's testimony in an official proceeding, that is, the case of *Pouncy v. Palmer*, Case No. 13-cv-14695, in the United States District Court for the Eastern District of Michigan, by having McGruder testify falsely in that official proceeding in exchange for payment.

All in violation of Title 18, United States Code, Section 1512(b)(1).


## COUNT FOUR
### Paying a Bribe to a Witness
### 18 U.S.C. § 201(b)(3)

D-1 Omar Rashad Pouncy
D-3 Rashad Shahid

53.    The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

21

54.    Beginning at a time unknown and continuing until on or about May 22, 2018, in the Eastern District of Michigan and elsewhere, defendants, D-1 Omar Rashad Pouncy and D-3 Rashad Shahid, directly and indirectly, corruptly gave, offered, and promised a thing of value to McGruder, with intent to influence the testimony under oath and affirmation of McGruder as a witness upon a hearing and other proceeding before a court authorized by the laws of the United States to hear evidence and take testimony.

All in violation of Title 18, United States Code, Section 201(b)(4).

### COUNT FIVE
### Accepting a Bribe as a Witness
### 18 U.S.C. § 201(b)(4)

D-2 Jaakawa McGruder

55.    The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

56.    Beginning at a time unknown and continuing until on or about May 22, 2018, in the Eastern District of Michigan, and elsewhere, defendant, D-2 Jaakawa McGruder, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive, a thing of value to McGruder and for any other person, in return for being influenced in testimony under oath and affirmation as a

witness upon a hearing and other proceeding before a court authorized by the laws

of the United States to hear evidence and take testimony.

All in violation of Title 18, United States Code, Section 201(b)(4).

### COUNT SIX
### Perjury
### 18 U.S.C. § 1623(a)

D-2 Jaakawa McGruder

57.    The allegations in paragraphs 1 through 42 are hereby realleged and

incorporated into this count by reference.

58.    On or about May 22, 2018, in the Eastern District of Michigan,

defendant, D-2 Jaakawa McGruder, while under oath as a witness in a proceeding

before a court of the United States, specifically, the United States District Court for

the Eastern District of Michigan, knowingly made a false material declaration.

59.    At that time and place, the Court was conducting a hearing in the case

*Pouncy v. Palmer*, Case No. 13-cv-14695, where Pouncy was seeking to establish

his actual innocence of carjackings committed in and around fall 2005, for which

Pouncy had been previously convicted. It was a matter material to this case to

determine whether or not Pouncy had actually committed the carjackings.

60.    At that time and place, McGruder, while under oath, knowingly

declared before the Court with respect to that matter as follows:

"QUESTION:    Mr. McGruder, why are you here today testifying in open court and under oath?

MCGRUDER:    Because, um, it's been something I've been trying to get off my chest to make it right and so I'm here.

QUESTION:    What do you mean to get off your chest and make it right?

MCGRUDER:    That I'm guilty of doing the carjackings that somebody else has done time for.

QUESTION:    And who is that someone else?

MCGRUDER:    Omar Pouncy."

*****

"QUESTION:    Were you involved in a series of carjackings in Genesee County in the fall of 2005?

ANSWER:    Yes.

QUESTION:    Who else was involved in those carjackings?

ANSWER:    [The third carjacker's name] and [Individual A].

QUESTION:    Was Omar Pouncy involved in any of those carjackings with you?

ANSWER:    No."

24

61. At the time of his testimony, McGruder then and there well knew that his statements were false.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT SEVEN
### Perjury
### 18 U.S.C. § 1623(a)

D-2 Jaakawa McGruder

62. The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

63. On or about May 22, 2018, in the Eastern District of Michigan, defendant, D-2 Jaakawa McGruder, while under oath as a witness in a proceeding before a court of the United States, specifically, the United States District Court for the Eastern District of Michigan, knowingly made a false material declaration.

64. At that time and place, the Court was conducting a hearing in the case *Pouncy v. Palmer*, Case No. 13-cv-14695, where Pouncy was seeking to establish his actual innocence of carjackings committed in and around fall 2005, for which Pouncy had been previously convicted. It was a matter material to this case to determine whether or not anyone had influenced or potentially influenced McGruder's testimony.

25

65.    At that time and place, McGruder, while under oath, knowingly declared before the Court with respect to that matter as follows:

> "QUESTION:    Okay. Did [Individual A] or anyone else tell you how to testify today?
>
> MCGRUDER:    No."

66.    At the time of his testimony, McGruder then and there well knew that his statement was false.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT EIGHT
### Perjury
### 18 U.S.C. § 1623(a)

D-2 Jaakawa McGruder

67.    The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

68.    On or about May 22, 2018, in the Eastern District of Michigan, defendant, D-2 Jaakawa McGruder, while under oath as a witness in a proceeding before a court of the United States, specifically, the United States District Court for the Eastern District of Michigan, knowingly made a false material declaration.

69.    At that time and place, the Court was conducting a hearing in the case *Pouncy v. Palmer*, Case No. 13-cv-14695, where Pouncy was seeking to establish his actual innocence of carjackings committed in and around fall 2005, for which

26

Pouncy had been previously convicted. It was a matter material to this case to determine whether or not anyone had influenced or potentially influenced McGruder's testimony.

70.    At that time and place, McGruder, while under oath, knowingly declared before the Court with respect to that matter as follows:

> "QUESTION:    Are you receiving any money for your testimony today?
>
> MCGRUDER:    No.
>
> QUESTION:    Did anybody ever offer to make any payments to you of any kind to be here?
>
> MCGRUDER:    No."

71.    At the time of his testimony, McGruder then and there well knew that his statements were false.

All in violation of Title 18, United States Code, Section 1623(a).

### COUNT NINE
### Subornation of Perjury
### 18 U.S.C. § 1622

D-1 Omar Rashad Pouncy
D-3 Rashad Shahid

72.    The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

73.    Beginning at a time unknown and continuing until on or about May 22, 2018, in the Eastern District of Michigan, defendant, D-1 Omar Rashad Pouncy, willfully procured D-2 Jaakawa McGruder to commit perjury by testifying falsely under oath to a material matter in a proceeding before a court of the United States, specifically, the United States District Court for the Eastern District of Michigan.

74.    On or about May 22, 2018, the Court was conducting a hearing in the case *Pouncy v. Palmer*, Case No. 13-cv-14695, where Pouncy was seeking to establish his actual innocence of carjackings committed in and around fall 2005, for which Pouncy had been previously convicted. It was matter material to this case to determine whether or not Pouncy had committed the carjackings.

75.    The defendant D-1 Omar Rashad Pouncy willfully procured the perjury alleged in Count Six corruptly, knowing, believing, and having reason to believe it was false testimony, and knowing, believing, and having reason to believe that D-2 Jaakawa McGruder then and there well knew that his testimony was false.

All in violation of Title 18, United States Code, Section 1623(a).

28

## COUNT TEN
### Subornation of Perjury
### 18 U.S.C. § 1622

D-1 Omar Rashad Pouncy
D-3 Rashad Shahid

76.     The allegations in paragraphs 1 through 42 are hereby realleged and incorporated into this count by reference.

77.     Beginning at a time unknown and continuing until on or about May 22, 2018, in the Eastern District of Michigan, defendant, D-1 Omar Rashad Pouncy, willfully procured D-2 Jaakawa McGruder to commit perjury by testifying falsely under oath to a material matter in a proceeding before a court of the United States, specifically, the United States District Court for the Eastern District of Michigan.

78.     On or about May 22, 2018, the Court was conducting a hearing in the case *Pouncy v. Palmer*, Case No. 13-cv-14695, where Pouncy was seeking to establish his actual innocence of carjackings committed in and around fall 2005, for which Pouncy had been previously convicted. It was matter material to this case to determine whether or not anyone had influenced or potentially influenced the testimony of McGruder.

79.     The defendant D-1 Omar Rashad Pouncy willfully procured the perjury alleged in Count Seven corruptly, knowing, believing, and having reason to believe it was false testimony, and knowing, believing, and having reason to

29

believe that D-2 Jaakawa McGruder then and there well knew that his testimony

was false.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT ELEVEN
### Subornation of Perjury
### 18 U.S.C. § 1622

D-1 Omar Rashad Pouncy
D-3 Rashad Shahid

80.     The allegations in paragraphs 1 through 42 are hereby realleged and

incorporated into this count by reference.

81.     Beginning at a time unknown and continuing until on or about May

22, 2018, in the Eastern District of Michigan, defendant, D-1 Omar Rashad

Pouncy, willfully procured D-2 Jaakawa McGruder to commit perjury by testifying

falsely under oath to a material matter in a proceeding before a court of the United

States, specifically, the United States District Court for the Eastern District of

Michigan.

82.     On or about May 22, 2018, the Court was conducting a hearing in the

case *Pouncy v. Palmer*, Case No. 13-cv-14695, where Pouncy was seeking to

establish his actual innocence of carjackings committed in and around fall 2005,

for which Pouncy had been previously convicted. It was matter material to this

case to determine whether or not anyone had influenced or potentially influenced the testimony of McGruder.

83.    The defendant D-1 Omar Rashad Pouncy willfully procured the perjury alleged in Count Eight corruptly, knowing, believing, and having reason to believe it was false testimony, and knowing, believing, and having reason to believe that D-2 Jaakawa McGruder then and there well knew that his testimony was false.

All in violation of Title 18, United States Code, Section 1623(a).

## FORFEITURE ALLEGATION

84.    Pursuant to Fed. R. Cr. P. 32.2(a), the government hereby provides notice to the defendants of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set for in this Indictment.

85.    Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of defendants:

      a.  Cannot be located upon the exercise of due diligence;

      b.  Has been transferred or sold to, or deposited with, a third party;

      c.  Has been placed beyond the jurisdiction of the Court;

      d.  Has been substantially diminished in value; or

31

e.  Has been commingled with other property that cannot be divided
    without difficulty;

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), and Title 28, United

States Code, Section 2461(c).

THIS IS A TRUE BILL
*s/Grand Jury Foreperson*
GRAND JURY FOREPERSON

DAWN N. ISON
United States Attorney


*s/Anthony Vance*
ANTHONY VANCE
Chief,  Branch Offices

*s/Ann Nee*
ANN NEE
Assistant United States Attorney

*s/Jules DePorre*
JULES DEPORRE
Assistant United States Attorney

Dated: May 3, 2023

32

| United States District Court Eastern District of Michigan | Criminal Case Cover | Case: 4:23-cr-20262 Judge: Kumar, Shalina D. MJ: Ivy, Curtis Filed: 05-03-2023 INDI USA v. POUNCY, et al (tt) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurate

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based on **LCrR 57.10(b)(4)**[1]: | |
| ☐Yes ☑No | **AUSA's Initials: AN** |

**Case Title:**     USA v.  Omar Rashad Pouncy, et al

**County where offense occurred:**     Genesee

**Offense Type:**     Felony

Indictment -- based upon prior complaint [**Case number:** 23-mj-30048, 22-mj-30533, 23-mj-30049]

## Superseding Case Information

**Superseding to Case No:** _____     **Judge:** _____

        **Reason:**

| **Defendant Name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

May 3, 2023
        Date

*Ann Nee*
Ann Nee
Assistant United States Attorney
600 Church Street
Flint, MI 48502
ann.nee@usdoj.gov
(810) 766-5177
Bar #: P81487

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence.  Cases may be companion cases even though one of them may have already been terminated.