UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

D-1 OMAR RASHAD POUNCY,

                Defendant.

_____/

Case No: 23-20262
Hon. F. Kay Behm
U.S. District Judge

### ORDER DENYING DEFENDANT'S MOTION FOR SUBSTITUTION OF COUNSEL (ECF No. 312)

In 2006, a jury convicted Defendant Omar Pouncy of violating several Michigan laws: four counts of carjacking, four counts of armed robbery, two counts of carrying a firearm while committing a felony, and one count of being a felon in possession of a firearm. He was sentenced to a lengthy prison term: 562 months for the carjackings and armed robberies, and 24 months for the felony firearm convictions. In 2013, Pouncy filed a federal habeas action seeking his release. *Pouncy v. Palmer*, No. 21-1811, 2025 U.S. App. LEXIS 11315, at *1 (6th Cir. May 8, 2025).

This case arises from allegations that during the course of that habeas action, in which he asserted actual innocence of the carjacking

1

convictions, Pouncy "devised a scheme to elicit, in conspiracy with others, false statements and false testimony . . . , and to obstruct justice, in order to secure his release from state prison, including by prevailing on his actual innocence claims . . . ." *See* ECF No. 14, PageID.107.

Before the court is "pro bono standby counsel's" motion on behalf of Pouncy for replacement of CJA-funded standby counsel for appointed counsel of Pouncy's choice (who would be his fifth appointed counsel).[1] As stated on the record on September 19, 2025, the motion is **DENIED**. The court follows that order with this written opinion to explain its reasoning.[2]

As the court has now reminded Pouncy many times, although the Sixth Amendment right to assistance of counsel includes a qualified "right to be represented by counsel of one's own choice," *Linton v.*

---

[1] For the reasons available in the record of the hearing, the court will also not use its discretion to appoint Mr. Milhouse because he is not a member of the CJA panel and has not undergone their relevant training or vetting process. The remaining analysis addresses the second and broader issue posed by Mr. Pouncy's motion – whether he is entitled to any substitution of counsel at this stage, whoever that person might be.

[2] Although the publicly-filed motion included a portion moving for replacement of the investigator in this case, the entire argument on that portion of the motion was held in an ex parte proceeding. The court enters a separate, sealed order resolving that portion of the motion.

*Perini*, 656 F.2d 207, 208 (6th Cir. 1981), "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). "[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).

## I.    A fifth substitution of counsel is not warranted.

Once a defendant brings "any serious dissatisfaction with counsel to the attention of the district court," the court has a duty to inquire into the source and nature of that dissatisfaction. *Benitez v. United States*, 521 F.3d 625, 632, 634 (6th Cir. 2008) (quoting *United States v. Iles*, 906 F.2d 1122, 1131-32 (6th Cir. 1990)). The court may grant a motion to withdraw or for substitute counsel if there is a showing of good cause upon further inquiry. *Id.* at 632.

While the Sixth Amendment guarantees criminal defendants the right to representation by counsel as well as the right to self-representation, *Faretta v. California*, 422 U.S. 806, 832-36 (1975), an indigent defendant is not entitled to appointment of counsel of his choice. *Akins v. Easterling*, 648 F.3d 380, 397 (6th Cir. 2011) (quoting

3

*Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008)).  The Sixth

Amendment does not even guarantee "a 'meaningful relationship'

between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14

(1983).  Substitute counsel may be warranted if the defendant shows

"good cause, such as 'a conflict of interest, a complete breakdown in

communication or an irreconcilable conflict with his attorney.'" *Henness

v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v.

Sullivan*, 431 F.3d 976, 979-80 (6th Cir. 2005)).

In determining if good cause for substitute counsel exists, four

factors are considered: the timeliness of the request, the scope of the

conflict between client and counsel and whether it prevented all

communication between them, and the public's interest in the efficient

administration of justice.  *Id.*[3]  However, an indigent defendant is not

entitled to "one free attorney after another, and the court may require

the defendant to choose between maintaining current counsel or

proceeding pro se." *United States v. Pittman*, 816 F.3d 419, 425 (6th

Cir. 2016).

---

[3] In an appeal, the appellate court also considers whether the district court
conducted an adequate inquiry into the extent of the alleged conflict.  *Id.*

### A.     There is not good cause for substitution of counsel

*Timing.*  The timing of the motion weighs in Pouncy's favor.
Generally, motions to withdraw filed too close to a trial date are
considered untimely, but the trial date in such cases tends to be nearer
than in the present case.  *See, e.g., United States v. Embry*, 644 F. App'x
565 (6th Cir. 2016) (requesting substitution less than a week before
trial was untimely); *United States v. Chambers*, 441 F.3d 438, 447 (6th
Cir. 2006) (filing motion to substitute counsel one-and-a-half months
before trial date, where discovery had closed nearly a year earlier, was
untimely).  Here, Pouncy brought his motion approximately three
months before the scheduled trial date of November 18, 2025.  *See* ECF
No. 286 (scheduling order).  With that said, the court notes that new
counsel would undoubtedly have to get up to speed on what Pouncy has
repeatedly referred to as a "complex" case, his motion indicates that he
would seek replacement of other support staff on top of his present
motion (ECF No. 312, PageID.2164), and the court is concerned that
any further replacements of new counsel will inevitably result in
additional continuances.  *See United States v. Vasquez*, 560 F.3d 461,
466 (6th Cir. 2009).

*Inquiry and Scope of the Conflict.*[4]  At the hearing on September 19, the court allowed both Pouncy to explain his concerns and allowed standby counsel to respond and present their account of the attorney-client relationship.  *See Chambers,* 441 F.3d at 447.  The court further allowed an ex parte portion of the hearing to occur so that both Pouncy and standby counsel could be more specific as to the nature of the breakdown outside the presence of opposing counsel.  The question for the court to consider is "whether the conflict between the defendant and his attorney [is] so great that it resulted in a total lack of communication preventing an adequate legal defense."  *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011).  This requires a showing beyond trivial dissatisfaction or "communication with counsel which the defendant feels is unsatisfactory."  *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996).  Upon the court's questioning of Pouncy and standby counsel, it is clear that there is not a "total lack of communication" between standby counsel and Pouncy.  Indeed, the

---

[4] Much of the court's inquiry occurred in the ex parte portion of the hearing held on September 19, 2025, in order to allow counsel and Defendant to speak more freely on the attorney-client relationship if necessary.  Given that the motion itself was entered on the public docket, this order is likewise entered on that docket.  The court relies on the representations made in the ex parte portion of the hearing, but does not detail those matters which remain confidential.

opposite is true; both described recent meetings with Pouncy over the Inmate Sales video call platform and daily text message communication.  Counsel have met with Pouncy in person, albeit on far fewer occasions than he would prefer.  Representations by both standby counsel indicated that, while they do not feel that many conversations with Pouncy are productive, the communication between them and Mr. Pouncy is consistent and current methods of communication are effective. While Pouncy may feel that amount of communication is unsatisfactory and may disagree with how the court has managed the scope of standby counsel's duties, that is insufficient here to show a complete breakdown in the attorney-client relationship.  *Jennings*, 83 F.3d at 149.

It is also well-established that Pouncy's disagreement with how counsel would defend his case is also insufficient to show a breakdown in their relationship absent a complete breakdown in communication. *Marrero*, 651 F.3d at 466-67 ("a defendant's differences of opinions with his attorney do not create a complete breakdown of communication that compromises his defense").  To the extent there is any conflict here, it is one created by Mr. Pouncy by his disagreement with standby counsels' sound advice.  *See United States v. Williams*, No. 2:23-CR-00111-1, 2024

U.S. Dist. LEXIS 86065, at *9 (E.D. Tenn. May 13, 2024) (counsel's

unwillingness to "devote his time, energy, and resources to a matter

that is peripheral or immaterial to his defense" is not sufficient to show

a breakdown in the attorney-client relationship); *Nieman v. Douglas*,

No. 24-1191, 2025 U.S. App. LEXIS 11987, at *12 (6th Cir. May 16,

2025) ("A disagreement between an attorney and client over the

attorney's strategic decision . . . is not a basis for substitution of counsel

where the disagreement does not prevent all communication between

them.") (citing *United States v. Collado-Rivera*, 830 F. App'x 161, 165

(6th Cir. 2020)).  Unproductive and even frustrating communication

with one another over a difference of opinion on strategy is not enough

to create good cause for substitution; attorney and client are not

required to be "on friendly terms."  *United States v. Swinney*, 970 F.2d

494, 499 (8th Cir. 1992) ("Although Willis and his attorney differed on

trial tactics and strategy, and expressed frustration with each other, the

record does not reflect an irreconcilable conflict or complete breakdown

in communication between them.").  Pouncy himself indicated clearly to

the court that the reason he "fired" Mr. Quinn and Mr. Bajoka (to

standby counsel status) was that they did not agree with his preferred

defense strategy (although the court notes that Mr. Bajoka has never

actually served as counsel in this case – thus far only serving in the capacity of standby counsel). The court does not doubt that much of their communication is difficult, and that this presents difficulty in conducting productive conversations. Nonetheless, issues with communication that are attributable to Defendant's differences on trial strategy are not sufficient to show a complete breakdown in the attorney-client relationship or good cause to substitute an attorney.

In the text of his motion, meanwhile, Pouncy made two other specific arguments for why a breakdown has occurred. One, "Defendant has learned that information given to appointed standby counsel was discussed with individuals not a part of the defense team (without Defendant's authorization)." ECF No. 312, PageID.2159. And two, he plans to bring ineffective assistance of counsel claims should this case reach appeal, premised on an alleged failure to file his motion to dismiss (ECF No. 201) in a timely manner. *Id.*

As to the first, the court has insufficient credible evidence that such a conflict has arisen, and the allegation appears unfounded. Mr. Pouncy made representations on that point at the hearing on September 19, indicating that he believes Mr. Bajoka disclosed attorney-client privileged communications to a third-party who he had

reached out to about possibly joining the defense team (in what capacity was not clear).  However, Mr. Bajoka represented to the court that he does not believe that any improper communications occurred.  The court has no further specific information regarding this purported issue and finds that Defendant has not met his burden to show an actual conflict or complete breakdown in communication has arisen between him and Mr. Bajoka on this point.  *See Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011) (no abuse of discretion where the trial court denied motion for substitution of counsel, "heard from both attorneys and Henness, . . . [and] noted that Henness's concerns about a breach of attorney-client confidentiality appeared unfounded . . .").

As to the alleged ineffective assistance of counsel claim, Pouncy's argument does not suffice to show a complete breakdown in communication with Mr. Quinn.  The mere fact that he apparently intends to lodge that complaint on appeal does not require substitution of counsel; i.e., Pouncy can still communicate with Mr. Quinn about future strategy in this case even if he disagrees with how Quinn handled the timing of a single prior filing in this case.  *See United States v. Littlejohn*, No. 22-3717, 2024 U.S. App. LEXIS 16371, at *6 (6th Cir. July 1, 2024) (substitution of counsel based on alleged

10

ineffective assistance must still be premised on ineffective assistance that results in a "complete breakdown in communication"); *State v. Johnson*, 435 P.3d 64, 70 n.3 (Mont. 2019) (applying the federal standard: "a defendant is entitled to substitute counsel based on a claim of ineffective assistance of counsel only when there is a complete collapse in attorney-client communication or in the attorney-client relationship and . . . a defendant should reserve his complaints regarding matters such as trial strategy and production of evidence for an appeal or postconviction claim").  Quinn's representations to the court at the hearing indicate that he and Pouncy remain in communication with one another, so the court does not find that this has resulted in a "complete collapse" in attorney-client communication. Notably, this alleged ineffective assistance claim also only applies as to Mr. Quinn – it cannot plausibly be leveled against Mr. Bajoka, who was appointed later.  *See* ECF No. 229.

*Public Interest.*  As explained in more detail below, this is not the first time that Mr. Pouncy has expressed dissatisfaction with, and sought the replacement of, court-appointed attorneys.  Given that this trial has already been delayed several times due to the withdrawal of attorneys who cited a breakdown of their relationship with Pouncy

based on his unwillingness to accept their professional advice, the court has no confidence that another replacement will prevent a recurrence of that issue. Therefore, the public's interest in the prompt and efficient administration of justice also outweighs the defendant's interest in appointing counsel of his choice. *See United States v. Steele*, 919 F.3d 965, 975 (6th Cir. 2019).

In sum, although the timing of Mr. Pouncy's motion favors him, the remaining factors all weigh strongly against him, there is no good cause justifying substitution of counsel, and the motion for substitution/appointment of counsel of his choice is denied. *See United States v. Higgins*, No. 22-3538, 2023 U.S. App. LEXIS 26680, at *27 (6th Cir. Oct. 6, 2023) (although timely, the rift was caused by defendant's disagreement on strategy and the request for substitution was thus properly denied).

## B. Pouncy's alleged conflict by representation by appointed counsel is meritless.

The court must also address Pouncy's argument that his two standby counsel have an actual conflict of interest because they were appointed by the Federal Defender Office, and a federal defender also represented one of his co-defendants. In an unadorned allegation,

12

Pouncy had previously stated that his counsel are conflicted and he does not waive the conflict.  ECF No. 279, PageID.1963 (same argument in an earlier withdrawn motion); *see* ECF No. 312, PageID.2162 (current motion).  Pouncy cites no authority for the startling proposition that when public defenders separately represent co-defendants, it represents an actual conflict of interest merely because the public defenders are appointed by the same office.  He appears to be borrowing the proposition that actual conflicts can arise when attorneys *jointly* represent co-defendants.  *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 168, 122 S. Ct. 1237, 1242 (2002) ("Whenever a trial court improperly requires joint representation over timely objection reversal is automatic") (citing *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978).  But his argument has two flaws: one, he improperly extends the principle of joint representation to this instance, and two, he makes no effort to prove an actual conflict of interest.

First, joint representation is limited to those circumstances where either a single attorney is representing multiple defendants, or by "counsel who are associated in the practice of law[.]"  *Mickens*, 535 U.S. at 175 n.6 (citing Fed. R. Crim. P. 44(c)); *Cuyler v. Sullivan*, 446 U.S. 335, 338, 349-50 (1980) (joint representation or "multiple

representation" refers to when counsel represents multiple individuals at once)); *Holloway*, 435 U.S. at 482 ("joint representation" refers to "a single attorney to represent codefendants").  Neither standby counsel works for FDPO.  They have their own law practices and merely participate in the CJA Panel for appointments.  Per their representations on the record, they do not work in the same law office as any attorney representing a co-defendant in this case.  This case therefore does not present the joint representation issues that Pouncy claims, and the argument is inapposite.

Second, even if this situation fell anywhere under the umbrella of joint representation, Pouncy makes no attempt to prove an actual conflict of interest.  *See also Mickens*, 535 U.S. at 172 n.5 ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.").  Two different attorneys from the FPDO can therefore represent co-defendants absent an actual conflict of interest.  *Eby v. Idaho*, No. 3:02-cv-00113, 2015 U.S. Dist. LEXIS 111153, at *18-19 (D. Idaho Aug. 20, 2015) ("Where multiple defendants are represented by different attorneys in a single public defender's office, that representation, . . . violates the Constitution only if the defendant's attorney has an *actual* conflict of interest '*that*

*affected counsel's performance*—as opposed to a mere theoretical division of loyalties.'") (emphasis in original, citations omitted, cleaned up); *see also Burns v. State*, 281 Ga. 338, 340 (2006) ("two attorneys from the same PDO can represent criminal co-defendants in those cases where no conflict exists.").[5]

Pouncy points to no "actual conflict" that adversely affects counsel's performance.  He instead simply says that the mere fact that the FPDO appointed the attorneys to represent him is sufficient to violate his Sixth Amendment right to conflict-free representation by his counsel.  ECF No. 312, PageID.2155, 2162.  That is a "theoretical division of loyalties" insufficient to carry his burden of proof, and that portion of his motion can be rejected on that basis.

However, as is often the case, the court must also correct the record here.  As noted on the record at the hearing on September 19, it is not true to say that the Federal Public Defender Office is the sole entity responsible for appointing his current counsel.  On the contrary: Pouncy himself sought out, selected, and requested the services of Mr.

---

[5] To the extent Pouncy repeats his argument that a conflict is created by his intention to lodge an ineffective assistance of counsel claim on appeal, *see* ECF No. 312, PageID.2162, that alleged conflict is addressed in Section I(A).

Quinn.  ECF No. 190, PageID.1200 (transcript of hearing on Dec. 4, 2024) (Pouncy indicating he spoke to Mr. Quinn, reviewed the case with him, and requesting the court inquire about selecting him specifically upon substitution of his second attorney).  Having requested Mr. Quinn's appointment in the first instance, Pouncy's about-face to claim a conflict of interest by Quinn's appointment can only be seen as a tactic to delay these proceedings.  *See United States v. Dumouchelle*, No. 20-20245, 2022 U.S. Dist. LEXIS 131515, at *5 (E.D. Mich. July 25, 2022) ("[a]n accused's right to . . . counsel cannot be manipulated to delay proceedings . . . .") (quoting *United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir. 1987)).

## C. Independent of a showing of good cause, his request for a fifth and sixth appointed attorney evinces a persistent and unreasonable demand for appointment of new counsel

It is worth remembering the circumstances of this motion and the specific relief Pouncy seeks in the context of this court's prior orders.  Both are highly suggestive that Mr. Pouncy is claiming and/or manufacturing a breakdown in the relationship with standby counsel in order to functionally select his court-appointed attorney.  Start with the

16

primary subject of his motion, Mr. Milhouse, the attorney he seeks to appoint.  Mr. Milhouse at first filed an appearance as "pro bono standby counsel," which the court took to mean that he was providing free consultative advice to Mr. Pouncy, and perhaps that he was considering representing Mr. Pouncy pro bono.  But "pro bono" representation necessarily means that he would not be paid, by either Pouncy or the court.  As Pouncy's present motion makes clear, however, he and Mr. Milhouse expect that Mr. Milhouse, if appointed, will be paid with public funds.  ECF No. 312, PageID.2164.  While Pouncy may prefer to phrase Mr. Milhouse's participation as that of "retained" counsel (*see* ECF No. 312, PageID.2160), his request for CJA funds (*id.* at PageID.2164) functionally transforms the motion into one seeking appointment of counsel of his choice when he cannot afford counsel and lacks pro bono representation.  Pouncy also adds that he will likely seek the appointment of attorney Tiffany Howell, who is currently serving as his paralegal.  *Id.*  Elsewhere, the court has described Mr. Pouncy's various attempts to have Ms. Howell appointed on his behalf.  *See* ECF No. 292, PageID.2026.  If appointed, Mr. Milhouse and Ms. Howell would be the fifth and sixth attorneys to be appointed on his behalf in this case.  The result is functionally an attempt to replace both current

standby counsel with attorneys that Pouncy has handpicked, when the court has warned him many times that he has no right to pick his court-appointed counsel. *See United States v. Powell*, 847 F.3d 760, 775 (6th Cir. 2017) (trial judge should conduct an assessment balancing the defendant's Sixth Amendment right against practical concerns such as "gamesmanship").

With the posture of this motion in mind, a brief history of Pouncy's prior motions to substitute counsel (or their motions to withdraw) is warranted. Including Mr. Quinn and Mr. Bajoka (as standby counsel), Pouncy is on his third and fourth appointed counsel, the first two having withdrawn for irreconcilable differences with Pouncy on matters of strategy. His first attorney, Craig Daly, withdrew citing irreconcilable differences and differences in defense strategy. ECF No. 45, PageID.251 ("It is clear from a recent interview with Pouncy that he does not accept the professional advice of the undersigned and there is no likelihood that he will change his opinion. There are significant differences regarding what strategy to employ that cannot be reconciled."). Pouncy tried to remove his second attorney by proceeding pro se (ECF No. 100), and Mr. Mihas then moved to withdraw, similarly citing differences in defense strategy (ECF No. 104). After the motion

was denied, Mr. Mihas later renewed that motion.  *See* ECF No. 131, PageID.709 ("Mr. Pouncy and undersigned counsel have significant differences regarding the law and what strategies to employ that cannot be reconciled").  Mr. Quinn was then appointed, and it should be again noted that his appointment was at Pouncy's request.  *See* ECF No. 190, PageID.1200 (transcript of hearing on Dec. 4, 2024) (Pouncy indicating he spoke to Mr. Quinn, reviewed the case with him, and requesting the court inquire about selecting him specifically as his third appointed attorney).

The court does not credit Pouncy's assertions that he has found new potential counsel who will advance his chosen theories of the case, avoiding conflict with counsel over trial strategy.  Whatever his strategy may be, it led to breakdowns of his first two attorney-client relationships, and has led him now to allege a breakdown with Mr. Quinn and Mr. Bajoka.  Even when he has, as now, presented an attorney of his choice to the court for appointment, that has not worked as intended.  Mr. Pouncy represented to Judge Kumar that he had pre-vetted Mr. Quinn to work with him, that they would be able to work together, and requested that the court appoint counsel of his choice.  *See* ECF No. 190, PageID.1200.  In his new motion, Pouncy seeks Mr.

19

Quinn's removal and appointment of a new counsel of his choice in part on the basis that they disagree about trial strategy.  Pouncy has thus demonstrated an "unreasonable proclivity for trying to wrestle matters of legal strategy away from" counsel.  *United States v. Williams*, No. 2:23-CR-00111-1, 2024 U.S. Dist. LEXIS 86065, at *10 (E.D. Tenn. May 13, 2024); *United States v. Ammons*, 419 F. App'x 550, 553 (6th Cir. 2011) ("A defendant is not entitled to new counsel and the delay that comes with it every time he disagrees with counsel's strategic judgment.").  There is simply no good reason to believe that any lawyer (Mr. Milhouse or anyone else) will be able to work with Mr. Pouncy any better than his current standby counsel.  *See United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992) (finding no abuse of discretion in denying substitution of counsel where defendant tried to control his defense in unusual ways).

Courts faced with such repeated requests for substitution frequently warn that the replacement of four attorneys is too many (if the court were to excuse both Mr. Quinn and Mr. Bajoka).  *See United States v. Coles*, 695 F.3d 559, 562 (6th Cir. 2012) (no error in finding that defendant had waived his right to counsel following the removal of the fourth assigned attorney); *United States v. Green*, 388 F.3d 918, 921

20

(6th Cir. 2004) (no abuse of discretion in refusal to appoint defendant a fourth attorney); *United States v. Pittman*, 816 F.3d 419, 425 (6th Cir. 2016) (affirming district court when fourth attorney asked to withdraw from the case, the court denied that request and warned defendant "that he had no right to continue auditioning new counsel until he found one he liked").

The court is not willing to continue to appoint one free attorney after another, and has no confidence that appointing a new attorney would solve the problems that have led to two attorneys being permitted to withdraw from his defense so far, and Mr. Pouncy refusing the services of two more. *See Coles*, 695 F.3d at 561 ("At some point, when competent[,] experienced counsel are informing the Court of their inability to continue to represent a defendant, one begins to suspect that the defendant is either irrationally hard to satisfy or, as an alternative, perhaps malingering or attempting to delay the trial."); *United States v. Henderson*, No. 98–5216, 1999 WL 313842, at *2 (6th Cir. May 3, 1999) ("A defendant's demand for a new attorney may be unreasonable if a defendant is 'completely unwilling to accept the consistent advice of . . . experienced criminal defense attorneys appointed to represent him.'").

In Mr. Pouncy's latest motion to replace counsel, the court finds that the motion evinces a "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel," and that he has waived his right to counsel through that conduct.  *Green*, 388 F.3d at 921; ECF No. 232, PageID.1547-48 (making that same finding as to his removal of Mr. Quinn and choice to proceed pro se).

### D.   Pouncy has a choice of proceeding with current appointed counsel or proceeding pro se

Because Mr. Pouncy's motion did not meet the good cause standard and he waived his right to counsel through his persistent, unreasonable demands for substitution of counsel, the court therefore required at the hearing that Mr. Pouncy choose between appointing his current standby counsel to represent him, or to proceed pro se.  *See Pittman*, 816 F.3d at 425 (such an approach is permissible to avoid indigent defendants requesting "one free attorney after another" until they land on an acceptable choice); *United States v. Higgins*, No. 22-3538, 2023 U.S. App. LEXIS 26680, at *26-27 (6th Cir. Oct. 6, 2023) ("a defendant cannot create the need for substitute counsel—or force his attorney's hand in moving to withdraw—by thwarting his own attorney-client relationship").

At the beginning of the hearing, the court engaged, as has been its practice in this case, in the *Faretta* warnings, at the conclusion of which the court found that Mr. Pouncy had knowingly, voluntarily, and intelligently waived his right to counsel for the hearing and for consideration of his motion to appoint Mr. Milhouse.  The court then informed Mr. Pouncy near the end of the hearing that his motion to appoint Mr. Milhouse was denied.  The court then presented him with the choice to appoint standby counsel to represent him or proceed pro se.

Upon requiring Pouncy to choose between appointing Mr. Quinn and Mr. Bajoka or to represent himself, Pouncy reiterated that he does not want Mr. Quinn or Mr. Bajoka to represent him, and asserted instead that he wants a different attorney.  Under the circumstances of the current posture of this case, that representation functions as a valid waiver of the right to counsel and a knowing choice to proceed pro se. "If a person is offered a choice between three things—an appointed attorney, hired counsel, or self-representation—and says 'no' to the first and the second, he's chosen the third even if he stands mute when asked whether the third is indeed his choice." *Pittman*, 816 F.3d at 426 (quoting *United States v. Oreye*, 263 F.3d 669, 670-71 (7th Cir. 2001))

(cleaned up).  Further, in accordance with the court's finding above, his persistent, unreasonable demand for replacement of counsel and appointment of new counsel functions as an independent, valid waiver of the right to counsel.  *Green*, 388 F.3d at 921.

## II.   Conclusion

The motion to substitute counsel is **DENIED** for the reasons explained above.  From this point forward, Mr. Pouncy may choose between appointing Mr. Quinn and/or Mr. Bajoka to represent him, or proceeding pro se with all the attendant risks of representing oneself.[6] If Mr. Pouncy seeks the appointment of Mr. Quinn and/or Mr. Bajoka, and a breakdown of their relationship follows due to conduct by Mr.

---

[6] The court would be remiss if it did not again warn Mr. Pouncy of the dangers of self-representation.  He has never formally studied law and is not an attorney, has no real familiarity with the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, is unacquainted with matters of trial strategy other than his prior experience representing himself, and does not seem to have a good grasp of the difference between relevant and irrelevant evidence or arguments.  If he is unable to allow counsel to control defense strategy and, as a consequence, represents himself at trial, his lack of experience with the law may prove particularly problematic, if not disastrous, to his defense because as he has noted, prosecution of these charges involves digital forensic evidence with which he lacks expert knowledge.  If Mr. Pouncy represents himself, he will be on his own.  The court cannot and will not tell him or advise him how to try his case.  It cannot and will not instruct him on the meaning or applicability of the Rules of Evidence or the Rules of Criminal Procedure, which he must abide by at all times.  It cannot and will not relax those rules for his benefit.  In sum, a trained attorney would defend Mr. Pouncy far better than he could defend himself, and the court recommends that course of action.  *See Williams*, 2024 U.S. Dist. LEXIS 86065, at *18-20 (E.D. Tenn. May 13, 2024) (similar warning).

Pouncy that compromises the attorney-client relationship, the court will consider that conduct a waiver of the right to counsel, will not appoint a new attorney, and Mr. Pouncy will proceed on his own by representing himself.[7]  Given this warning, Mr. Pouncy must be ready for trial on the scheduled date, whether by way of attorney representation or his own.

**SO ORDERED**.


Date: September 25, 2025          s/F. Kay Behm
                                 F. Kay Behm
                                 United States District Judge

---

[7] The district court may issue such a warning when it makes explicit findings on the basis for waiver of the right to counsel.  *United States v. Johnson*, 24 F.4th 590, 603 (6th Cir. 2022) (citing *Coles*, 695 F.3d at 561-62).