UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

|  |  |
|---|---|
| Plaintiff, | Case No: 23-20262 |
|  | Hon. F. Kay Behm |
|  | U.S. District Judge |
| v. |  |
| D-1 OMAR RASHAD POUNCY, | Case No: 26-mc-50066 |
|  | Hon. Stephen J. Murphy III |
| Defendant. |  |

_____/

**ORDER RESOLVING ORDER TO SHOW CAUSE, PROHIBITING HARRELL D. MILHOUSE'S ACCOUNT FROM FILING PAPERS IN THIS MATTER, AND REFERRING HARRELL D. MILHOUSE FOR FURTHER PROCEEDINGS**

On February 2, 2026, this court entered an order requiring Mr. Harrell Milhouse (who has withdrawn from this matter and is not listed as counsel or standby counsel in this case) to show cause why the court should not enter an order prohibiting his electronic account from being used to file any papers in this matter, and why this court should not refer him to the Chief Judge of this district for disciplinary proceedings for the failure to supervise his paralegal. ECF No. 456. The form of this response was to be a declaration pursuant to 28 U.S.C. § 1746. *Id.* at PageID.3541. And if Mr. Milhouse intended to continue filing

1

documents on this docket, he was ordered to file a separate, short brief explaining the authority for the proposition that he may, even after withdrawing his appearance from this case and from his already-limited capacity as "pro bono standby counsel," continue to file documents on Mr. Pouncy's behalf.  ECF No. 456, PageID.3542; *see* LR 83.25.

Mr. Milhouse's response is not in the proper form, and satisfies none of the court's stated concerns, so the court will prohibit his electronic account from being used to file papers in this matter and refer him to the Chief Judge of this district for disciplinary proceedings.

## I.    ANALYSIS

A bit of background to this matter.  Before the hearing held on January 8, 2026, a motion was filed from Mr. Milhouse's electronic account, apparently seeking some form of reconsideration of multiple prior orders of the court.  *See* ECF No. 443.  But when asked to argue his own motion at the hearing that same day, Mr. Milhouse said he was "blind-sided" by its filing.  He was provided with a copy of the motion but did not recognize it, and "didn't even know it was filed."  He represented that he did not sign it nor authorize it to be signed.  And when questioned further by the court about how he wanted to proceed

in this matter, he stated that he would not be representing Defendant pro bono at trial.[1]  When later asked by the court if he would be representing Mr. Pouncy pro bono in any manner – standby counsel or otherwise – Mr. Milhouse said he would not.  Defendant claimed that Mr. Milhouse had, in fact, agreed to represent him and would be representing him – but Mr. Milhouse immediately disclaimed that, too.

Following the hearing, Mr. Milhouse's appearance was withdrawn on the basis of his representations to the court that he was no longer representing Mr. Pouncy in any manner.  But that was not the end of it, because a new document (ECF No. 455) was subsequently filed from Mr. Milhouse's electronic account.  The court's subsequent show cause order reflected its concern, based on Mr. Milhouse's own statements, that Mr. Milhouse was not aware of filings being made from his account, was not properly supervising his paralegal, and the disruption to the orderly administration of justice that is likely to occur if the court were to allow an attorney who has withdrawn his appearance in this matter (and represents no party in this matter) to continue filing documents on the docket.  *See* ECF No. 456.

---

[1] This court has already explained why it will not substitute existing standby counsel nor agree to fund Mr. Milhouse with CJA funds.  *See* ECF Nos. 338, 345.

Mr. Milhouse now responds alleging that he did, after all, authorize the filing at ECF No. 443, but had forgotten that he had done so.  ECF No. 462, PageID.3565.  In this version of events, he authorized its filing in "late October or early November 2025."  *Id.*  And Ms. Grant, a paralegal allegedly operating under his supervision for Mr. Pouncy's case alone, forgot to file it but then filed it in January.  *Id.*  Mr. Milhouse then alleges that now that this mix-up has been cleared up, he is willing to represent Mr. Pouncy either as "pro bono standby counsel" or as "retained pro bono counsel of record," subject to certain conditions (that is, additional funding authorized by the court).  *Id.* at PageID.3566.  The court finds his response inadequate to assuage the court's concerns for the following reasons.

*First*, Mr. Milhouse's explanation of the events surrounding the filing of ECF No. 443 does not take the form of a declaration pursuant to 28 U.S.C. § 1746, as ordered by the court.  ECF No. 456, PageID.3541.  A declaration under that provision must include the following language, or language "substantially" similar: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)."  28 U.S.C. § 1746.  The court

included this requirement because, given Mr. Milhouse's representations to the court surrounding ECF No. 443, the court sought sufficient indicia of credibility for a filing coming from his electronic account so that the court could properly rely on its veracity.  Lacking a certification that this response was made "under penalty of perjury," the court finds that the response neither complies with the court's order nor includes sufficient indicia of reliability that the court can credit the truth of its contents.[2]

*Second*, even considering Mr. Milhouse's representations on their merits, and even assuming that they are credible (the court makes no such finding here), they do little to respond to the court's stated concern that he has failed to supervise a paralegal working under his direction. *See* Rule of Professional Conduct 5.3(b).  At best, his new allegations – which are at odds with his conduct and representations to the court at the hearing on January 8, 2026 – represent that he instructed his paralegal to file a document, which she did not do for several months

---

[2] Ms. Grant's "affidavit," which the court did not seek in its order, also does not assert that it was made under penalty of perjury.  It does not appear to have been witnessed or sworn before a proper official, making its heading a misnomer. *See* ECF No. 462, PageID.3572.  Particularly in light of Ms. Grant's failure to appear when ordered by the court, the court does not credit her unsworn assertions that were not made under penalty of perjury.

5

nor inform him of that error, but she then filed the document months later, again without telling him she would be doing so and without informing him that she had done so, with the result that Mr. Milhouse disclaimed all knowledge of the filing when the court tried to hear argument on the motion. Even assuming that is an accurate summary of the relevant events (again, the court makes no finding that this new explanation is credible), this summary would not satisfy the court that Mr. Milhouse made reasonable efforts to ensure that Ms. Grant's conduct was "compatible with the professional obligations of the lawyer[.]" *See id.* His representation that there was merely "some" (apparently, in his view, inconsequential) delay in transmitting the filing to the court does not accurately describe the issue or his professional obligations.

*Third*, Mr. Milhouse independently failed to respond to the court's requirement that he include a separate, "short brief explaining the authority for the proposition that he may, even after withdrawing his appearance from this case," continue to file documents on Mr. Pouncy's behalf. ECF No. 456, PageID.3541-42. Mr. Milhouse's response appears to both provide unsworn factual allegations in paragraph form,

and in other paragraphs combines factual allegations with requests for relief.  *See* ECF No. 456, PageID.3542.  But Mr. Milhouse did not respond in any way, as far as the court can tell, to the requirement that he produce authority for the proposition that he may continue to file documents even after withdrawing his appearance in this matter.  His failure to respond is sufficient to bar his account from continuing to file documents purportedly on Defendant's behalf.  And his failure to comply with the court's order by clearly separating the two responses is sufficient to find his response inadequate.

*Fourth*, Mr. Milhouse's response also apparently seeks to be a motion for reconsideration brought on Mr. Pouncy's behalf.  ECF No. 462, PageID.3564 ("This motion in effect asks this Court to reconsider and vacate any portion of its prior orders . . .").  This is improper; Mr. Milhouse has withdrawn his appearance from this case.  Mr. Pouncy is representing himself, and his signature appears nowhere on the document.  Mr. Milhouse cannot file motions on Pouncy's behalf in this posture.  The motion is denied on that basis.[3]  Relatedly, Mr. Milhouse's

---

[3] Even if he could file such a motion, that motion for reconsideration of "prior orders" is also untimely.  The court does not agree that there was good cause for its untimeliness; again, Mr. Pouncy represents himself and was capable of

failure to separate his response to the court's show cause order from a separate brief for any motion for relief violates Local Rule 7.1, and any request for relief would thus be properly denied for failure to make that request in a single, separate brief.  LR 7.1(d)(1)(A) ("each motion and response to a motion must be accompanied by a single brief"); 7.1(i) ("Motions must not be combined with any other stand-alone document.").

So the court lastly turns to Mr. Milhouse allegedly seeking to represent Mr. Pouncy in some capacity.  Although Mr. Milhouse yet again claims that he "remains willing to assist Mr. Pouncy, preferably as retained *pro bono* counsel of record," he (again) qualifies that statement on the condition that "the Court provide[] the necessary funding for adequate resources to effectively represent Mr. Pouncy[.]" ECF No. 462, PageID.3566.  But this reference to reopening settled matters is improper; the court has been very clear with Mr. Milhouse and Defendant both that it will not pay Mr. Milhouse CJA funds for his

---

transmitting a filing to the court on his own or through standby counsel.  Nothing about Mr. Pouncy's move to MCC Chicago is alleged to have affected his ability to take either course of action.  And were the court to reach the merits, Mr. Milhouse's revised version of events advances no new facts that "warrant a different outcome" nor "new facts [that] could not have been discovered with reasonable diligence before the prior decision."  *See* E.D. Mich. LR 7.1(h)(2)(C).

services and why that is the case (ECF No. 338), and the court has been clear regarding which support services it has terminated and which services it continues to fund (therefore, which services would also remain available to Mr. Milhouse and which are permanently terminated).  *See, e.g.*, ECF Nos. 339, 361; *see also* ECF No. 451.  Mr. Milhouse has acknowledged on the record, including at the latest hearing on January 8, 2026, that the court's orders stand thus.  Mr. Milhouse cannot credibly claim confusion on this point.

Nor is the court willing to continue to entertain requests of this kind.  Mr. Milhouse has sought to represent Mr. Pouncy as "retained" counsel (pro bono) in some capacity on at least 3 separate occasions. Each time the court has resolved the issue presented, he has shifted the nature of his proposed appearance.[4]  The court will not allow Mr.

---

[4] Mr. Milhouse first appeared as "pro bono standby counsel" on August 4, 2025.  ECF No. 304.  At the hearing on August 6, 2025, Mr. Pouncy indicated that he wanted Mr. Milhouse to serve only in that limited role.  ECF No. 343, PageID.2590.  But Mr. Milhouse quickly moved to be substituted in as appointed counsel after that hearing concluded, paid with CJA funds, on August 13, 2025. ECF No. 312.  The court denied that request on September 19, 2025 and in a follow-up written order, noting (among other reasons) that Mr. Milhouse is not a member of the CJA panel and would be Defendant's fifth attorney, and that a fifth substitution of counsel was not warranted.  ECF Nos. 345 (sealed transcript), 338 (written order).  But that was not the end of it, because then came a third version of Mr. Milhouse's appearance: an appearance purporting to seek to come in as "retained lead counsel" on Pouncy's behalf.  ECF No. 348.  At a hearing held on

Milhouse to go around and around and further delay this case by re-filing papers claiming to be seeking to appear on Defendant's behalf. Mr. Milhouse's conduct and failure to commit to a posture, and Mr. Pouncy's continued acquiescence and support of Mr. Milhouse's motions to represent him, have irrevocably delayed this case. The court is satisfied that this refusal to rehear the issue does not intrude on Mr. Pouncy's right to counsel; both he and Mr. Milhouse have had ample opportunity to discuss the scope of Mr. Milhouse's representation, issues related to funding Mr. Milhouse's services or other support staff, and to review and discuss the relevant court orders that may bear on those matters. Mr. Milhouse's present attempt to condition his appearance as retained counsel on reconsideration of prior court orders is denied; the court will not reconsider its orders terminating paralegal and investigative services, and his conditional request to substitute as retained counsel is understood to be mooted by that decision.

---

October 29, 2025, however, the court sought clarity from Mr. Milhouse, given his shifting stance. And rather than appear as retained counsel, Mr. Milhouse instead withdrew his motion to substitute as retained counsel on October 29. This count excludes ECF No. 443, which again purported to seek Mr. Milhouse's appearance in this matter on Defendant's behalf. Though of course, that filing was not, according to Mr. Milhouse's contemporaneous representations, authorized by him – or if it was, then he had intended to file that soon after the hearing on October 29 and once again would have immediately reversed course from his position at the hearing. The court must question this pattern and possible tactic to delay trial.

Finally, Mr. Milhouse states that he "remains willing to continue as retained *pro bono* standby counsel and asks that his appearance be reinstated." ECF No. 462, PageID.3566. But Mr. Milhouse withdrew his appearance at the last hearing. The court has asked Mr. Milhouse – over and over again – what his plan in this case was. His failure to commit to a firm answer is itself an answer. His request to be reinstated as "pro bono standby counsel" is denied; the court has appointed qualified standby counsel who have served ably thus far. Mr. Pouncy, representing himself, has no right to standby counsel at all; standby counsel is only permitted at the court's discretion. *See United States v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987). It follows that Defendant has no right to select or direct the appearance of a particular standby counsel, even on a "retained pro bono" basis. *See* ECF No. 308 (making that finding); *United States v. Webster*, 84 F.3d 1056, 1063 (8th Cir. 1996) ("a defendant does not have a right to standby counsel of his own choosing."); *United States v. Cohen*, 888 F.3d 667, 680 (4th Cir. 2018) ("no right to the appointment of a standby counsel after he chose to proceed pro se, let alone the right to a standby counsel of his choosing"); *United States v. Mills*, 895 F.2d 897, 904 (2d Cir. 1990)

11

(defendant "not entitled to the appointment of a standby of his own choosing"); *see also United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986) (no right to be represented by standby counsel of choice nor a non-lawyer of choice).  Because the allowance of standby counsel is entirely within the court's discretion – whether purporting to be "retained pro bono" or whether court-appointed – the court reiterates that standby counsel in this case remains only the two court-appointed counsel on offer, Mr. Quinn and Mr. Bajoka.  Given the late hour, the court also will decline to allow any new "retained" attorneys to serve as standby counsel in any capacity, should any appear and seek that relief.

## II.   CONCLUSION

It is therefore **ORDERED** that:

Given Mr. Milhouse's withdrawal of his appearance in this matter, that he failed to respond properly to the court's show cause order, and that he is not permitted to serve as standby counsel in this matter, Mr. Milhouse's electronic account may not be used to file any additional papers in this action.  The Clerk is **DIRECTED** to **STRIKE** any further filings made from that account.  The court will not consider any paper so filed.  Should Mr. Pouncy wish to file a paper in this action or

transmit a filing to the court, he may do so on his own using other methods available to him.  The court will not reconsider the issue of Mr. Milhouse appearing on Mr. Pouncy's behalf or representing him in any manner; Mr. Milhouse has had ample opportunity to decide on a course of action and still has failed to provide the court with a clear answer. To continue to move this case to trial in a manner consistent with Defendant's right to a speedy trial, the issue will not be reopened.

Because Mr. Milhouse's response does not follow the proper form ordered by the court and therefore lacks sufficient indicia of reliability and credibility, Mr. Milhouse is also **REFERRED** to the Chief Judge of this district for disciplinary proceedings for investigation into the failure to supervise his paralegal and her apparently unsupervised use of his electronic filing account.  *See* E.D. Mich. LR 83.22(c).

If Mr. Milhouse fails to comply with this order and continues to file documents in this matter even after an order confirming the withdrawal of his appearance in this matter, the court may impose more severe sanctions on him, including but not limited to monetary sanctions for each filing made in violation of this order, which will be payable to the court.  *See* LR 11.1; 83.25; 83.22(b).

To the extent that ECF No. 462 is intended to be a motion rather than a response to the court's show cause order, it is **DENIED** in full for the reasons explained above.

As for the filing that triggered the court's show cause order (ECF No. 455), by its own terms and by the terms of Mr. Milhouse's representations it represents a copy of (or notification of) Mr. Pouncy's pending mandamus action in the Sixth Circuit Court of Appeals seeking the undersigned's disqualification.  *See In re: Omar Pouncy*, No. 26-1120 (6th Cir. 2026); *see also* ECF Nos. 283, 340, 437 (all addressing his arguments for recusal).  It is, therefore, a matter not properly before this court filed by an attorney who has withdrawn his appearance in this action, and is **STRICKEN**.

SO ORDERED.

Date: February 26, 2026            s/F. Kay Behm
                                   F. Kay Behm
                                   United States District Judge

14