UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 OMAR RASHAD POUNCY,

Defendant.

_____/

Case No: 23-20262
Hon. F. Kay Behm
U.S. District Judge

## **OPINION AND ORDER ON MOTION TO SUBSTITUTE AND TO WITHDRAW PLEA (ECF No. 543)**

Defendant Omar Pouncy went to trial before a jury of his peers,

but before the jury could return a verdict, pleaded guilty to suborning

perjury.  ECF No. 532.  The court accepted his plea agreement that

same day.  ECF No. 538.  Defendant Pouncy seemingly regrets that

decision, and seeks several forms of relief in an effort to avoid the

consequences of that act.  Before the court is Pouncy's motion that he

titles "substitution of counsel," in which he makes a number of requests.

ECF No. 543.  Although he is represented, even a *pro se* request of this

kind requires the court to delve into the reasons for his dissatisfaction

with counsel and determine appropriate next steps.  *See United States*

1

*v. Riley*, 155 F.4th 787, 795 (6th Cir. 2025). When "a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty" to inquire as to whether that dissatisfaction gives rise to good cause for counsel's withdrawal. *Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008).

Pouncy asks for the court (1) to allow him to retain counsel, (2) to substitute his appointed counsel, or if neither of the first options are available, then (3) to allow him to proceed *pro se* once more. ECF No. 543, PageID.5797. The first request would, on its face, obviate the need for the other two requests, because if Pouncy has retained counsel, then he has no need for appointed counsel or to represent himself. But Pouncy's request for an opportunity to retain counsel may turn out to be a dead end. Pouncy has, after all, now had three years to retain counsel, and though he has on occasion claimed that he is in talks to retain an attorney, none has ever appeared on his behalf. He has also made explicit requests to allow "retained" counsel to substitute in before, and it has ended up either that no retained counsel in fact is prepared to appear on his behalf, or (in the case of Mr. Harrell Milhouse), that Mr. Milhouse's supposed "retained" status was not in

2

substance "retained counsel" at all, and Pouncy in fact sought other relief. So the court feels it prudent to first explain why neither of the latter two options are available to Mr. Pouncy, and proceeds from there. For the reasons explained below: (1) the motion to substitute appointed counsel is denied, (2) Defendant will not be permitted to resume self-representation, (3) any retained counsel must file their appearance within 14 days, and (4) the court construes the motion in part as a motion to withdraw his plea, a matter that will be held in abeyance pending resolution of the retained counsel issue.

## I.    Substitution of counsel

Start with the most straightforward of these matters; Defendant is not entitled to substitution of counsel. The court has explained this very point many times, including during trial, and the court does not think it necessary to reiterate all of its prior analysis, which it incorporates by reference. *See, e.g.*, ECF Nos. 338, 232, 482. Suffice to say that the court has found, on numerous occasions, that Pouncy has persistently and unreasonably attempted to seek substitution of counsel, and that no good cause exists to permit either substitution or withdrawal of current counsel. This court also previously found that

Pouncy's arguments regarding conflicts with defense counsel were an attempt to manufacture said conflicts, and further, were an attempt by Pouncy to ensure that his preferred attorney Harrell Milhouse would be substituted as appointed counsel and paid with public funds.  *See, e.g.*, ECF No. 338, PageID.2392; *see also Akins v. Easterling*, 648 F.3d 380, 397 (6th Cir. 2011) (an indigent defendant is not entitled to appointment of counsel of his choice) (quoting *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008)).  So presumably in an effort to avoid the effect of those prior orders and findings, Defendant tries a few new variations on his old theories, none of which go anywhere.

When reviewing a motion to substitute counsel, the court should review the source of the dissatisfaction, and consider three factors: (1) the timeliness of the motion, (2) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (3) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.  *See United States v. Vasquez*, 560

F.3d 461, 466 (6th Cir. 2009).[1]  Given that sentencing in this matter is set for July 2026, and this motion was postmarked within the court's two-week window for motions, the motion is timely.  But the remaining factors weigh strongly against Defendant, and the court's prior findings remain unchanged.

First, Pouncy contends that counsel should be allowed to withdraw because of a "bona fide conflict" with himself.  Although Pouncy does not offer detail on that point, the court can assist in filling in the blanks.  In short: Pouncy repeatedly threatened appointed counsel during the course of trial and indicated that in doing so, he would do what he needed to do to have counsel removed and force them to withdraw.  *E.g.* ECF No. 526, PageID.4788.  While the court does not

---

[1] "[A]n on-the-record, in-person hearing is not always necessary.  For instance, a district court need not conduct an in-person hearing where . . . the court otherwise has sufficient information to address the motion[.]"  *United States v. Troutman*, No. 23-3209, 2023 U.S. App. LEXIS 31789, at *9 (6th Cir. Nov. 30, 2023) (citing *Martel v. Clair*, 565 U.S. 648, 664 (2012)).  Here, Pouncy has fully briefed his reasons for dissatisfaction with counsel.  He indicates his current conflict with counsel is the conflict he has "repeatedly informed this court of[.]"  ECF No. 543, PageID.5797.  The court has addressed the alleged "conflicts" Defendant has previously raised, and has given Mr. Pouncy many opportunities to fully address his position on the record, along with hearing counsels' side of the story.  The court has sufficient information at its disposal to fully address the present motion, including the new bases asserted, and incorporates its prior findings that Pouncy has persistently and unreasonably sought substitution of appointed counsel.  Pouncy's assertion of the need for a hearing in which counsel will "serve as witnesses" against him is, in the court's view, one more attempt to manipulate the judicial process and delay this proceeding.  *See* ECF No. 543, PageID.5799-800.

doubt these kinds of threats adversely affected his relationship with counsel, and notes counsels' patience and hard work at trial, "good cause" for substitution does not exist when the breakdown in the attorney-client relationship is entirely the defendant's fault. *United States v. Noble*, 42 F.4th 346, 351 (3d Cir. 2022); *United States v. Wilson*, No. 24-5471, 2025 LX 12598, at *2 (6th Cir. Apr. 29, 2025) (a defendant's dissatisfaction with counsel must also be "justifiable"); *see also Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011) (the public interest weighs against defendant when "much of the difficulty result[s] from [the defendant's] own refusal to cooperate with his counsel"); *United States v. Taylor*, 652 F.3d 905, 909 (8th Cir. 2011) (explaining why conflicts manufactured by a defendant to try and coerce the court into appointing counsel of choice does not constitute good cause for substitution of appointed counsel). Next, Pouncy contends that his motion is motivated by an irreconcilable conflict based on his attorneys' refusal to call a particular witness. But decisions over which witnesses to call are entrusted to counsel's discretion, so are not good cause to substitute counsel. *See McCoy v. Louisiana*, 584 U.S. 414, 422, 424 (2018); *Davis v. Lafler*, 658 F.3d 525, 537-38 (6th Cir. 2011). The same

6

goes for Pouncy's argument that counsel should have objected to a particular statement by one of the government's witnesses or asked for an adverse instruction based on that testimony.  Objections to testimony or arguments at trial are counsel's province.  *See New York v. Hill*, 528 U.S. 110, 115 (2000).[2]  A similar analysis applies to Pouncy's argument that counsel allegedly told him the wrong number of elements to a reliance on counsel defense in this circuit.  It is irrelevant what counsel told or did not tell Defendant regarding what the elements of that defense are.  When Defendant represented himself, the quality of his defense fell on his shoulders, and he cannot point the finger elsewhere; when the court revoked his right to represent himself, the choice of trial strategy became counsel's alone.  *McCoy*, 584 U.S. at 422 ("Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue,

---

[2] Anyway, Pouncy himself raised this objection and line of argument at trial; his disobedience of court rulings on that issue was, in fact, one of the many bases for the court revoking his right to represent himself.  The evidence in question that he sought to introduce was ruled inadmissible, and he ignored that order.  See ECF No. 525, PageID.4564, 4699-705, 4764-71.  His present argument that he was entitled to continue that line of questioning or introduce evidence on that point once again ignores the court's ruling on that issue.  But most importantly, all of this occurred before he pleaded guilty, and when he entered his plea, he was well-aware of all rulings on the subject, and this disagreement with court rulings says nothing about his relationship with counsel surrounding the entry of his plea.

what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.") (quotation omitted).  Finally, Pouncy says counsel gave him an incorrect guideline range before he pleaded guilty.  But that issue does not address or indicate a "total breakdown" in communication that might show a need to substitute counsel.  *See United States v. Wells*, 55 F.4th 1086, 1092 (6th Cir. 2022) (finding replacement of defendant's counsel because of "buyer's remorse" regarding a guilty plea likely would "thwart[] the prompt and efficient administration of justice").

To the extent many of Pouncy's latter arguments should instead be more properly construed as arguments of ineffective assistance of counsel, those are matters that can be addressed by collateral review under 28 U.S.C. § 2255, but do not constitute good cause to substitute counsel before sentencing.  *And see Hentzen v. United States*, No. 22-5573, 2023 U.S. App. LEXIS 33259, at *14 (6th Cir. Dec. 13, 2023) ("Disagreement over trial strategy is not a basis for ineffective assistance of counsel.") (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  And to the extent they are arguments to withdraw his plea, that is addressed below.  The court once again finds that these

arguments evince a persistent and unreasonable demand for substitution of counsel, that they likely represent an attempt to delay these proceedings, and that Pouncy is not entitled to newly appointed counsel.

## II.   Self-representation

As a third option, Defendant seeks to re-invoke his right of self-representation.  Although Defendant proceeded *pro se* for much of the past year, at trial the court revoked Defendant's right to represent himself for his pattern of serious and obstructionist misconduct across the pretrial and trial proceedings in this matter.  A trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.  The right of self-representation is not a license to abuse the dignity of the courtroom. Nor is it a license not to comply with relevant rules of procedural and substantive law.  *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). Similar to the facts of *United States v. Luscombe*, 950 F.3d 1021, 1030 (8th Cir. 2020), the court found that Defendant Pouncy "repeatedly and frequently defied" this court's orders not to argue with witnesses, not to interrupt witnesses, and not to interject his own testimony during his

examination of witnesses.  At trial, Pouncy repeatedly violated court orders, often almost immediately after the court entered the order, including (but not limited to) during his opening statement and his cross-examination of government witnesses.  When warned to follow the court's orders, the Federal Rules of Evidence, and Rules of Procedure, he disregarded those additional warnings.  Defendant was "repeatedly admonished" to follow the court's directives, and his right to self-representation was terminated only after fair warning that continued misconduct would result in such an action.  Defendant frequently interrupted the court, interrupted the Government, and continued to do so despite repeated warnings.  Defendant's conduct was more than just "poor lawyering"—it interrupted the trial process and was seriously obstructive.  *See McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984) ("an accused has a Sixth Amendment right to conduct his own defense, provided only that . . . he is able and willing to abide by rules of procedure and courtroom protocol").  Further, Defendant attempted to speak to government witnesses during breaks in testimony, and sent Facebook messages after trial began apparently calling potential witnesses "rats" and "snitches" and inviting community members to

come see "everybody who['s] snitching."  Such actions further evinced a disregard for the rules and supported a finding that the totality of Defendant's conduct was seriously obstructive to these proceedings.  *See Luscombe*, 950 F.3d at 1030; ECF No. 511 (making these findings).

In light of his persistent pattern of misconduct at all pretrial hearings, and at trial itself, Pouncy is not entitled to regain the right to represent himself at sentencing.  For one, nothing in the Supreme Court's jurisprudence on the subject indicates that the right of self-representation is a right that must always be capable of being regained.  Unlike in *Illinois v. Allen*, which sets out a framework under which a defendant must be allowed back into the courtroom for his trial if and when he abides by courtroom protocol, the Supreme Court's self-representation jurisprudence does not clearly refer to any requirement that a defendant must be offered multiple chances at self-representation; *Faretta*, for example, speaks only of "terminating" the right without any limitation.  *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct"); *see also McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984)

("an accused has a Sixth Amendment right to conduct his own defense, provided only that . . . he is able and willing to abide by rules of procedure and courtroom protocol"); *compare Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings."). The Sixth Circuit frequently issues form warnings to *pro se* litigants that they may forfeit their right to self-representation, without any indication that such forfeiture may be temporary based on improved behavior. *See, e.g., United States v. Powell*, No. 25-3838, 2025 LX 563794, at *3 (6th Cir. Dec. 16, 2025).

But assume there is a presumption, at least outside of the context of the trial itself, that the right to self-representation should at some point be re-evaluated, even after a defendant forfeited the right by his misconduct.[3] Courts that have addressed the subject speak to whether

---

[3] The court set out its reasoning, on the record, why no such presumption existed in this case during trial itself, or if such a presumption exists in general, why it was rebutted in this case by the totality of the circumstances. ECF No. 526, PageID.4801- 12. Additional concerns prevented the court from allowing Pouncy to regain his right to represent himself at trial, including, but not limited to: the need to minimize disruption caused by flip-flopping between defense counsel and Defendant, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury. *See United States v. Dunlap*, 577 F.2d 867, 868 (4th Cir. 1978);

12

there is "good cause to believe that" [the defendant] would continue to disrupt the proceedings if the court permitted him to resume self-representation." *See United States v. Mosley*, 607 F.3d 555, 559 (8th Cir. 2010); *see also United States v. Brock*, 159 F.3d 1077, 1080 (7th Cir. 1998) (holding the trial court did not need to allow the defendant to represent himself at trial when there was a "strong indication that [the defendant] would continue to be disruptive at trial.").

There is ample good cause, and every indication, that Mr. Pouncy will continue to be disruptive if permitted to represent himself again. The court was extraordinarily patient with Mr. Pouncy's courtroom antics, both pretrial and during trial. At every step of the process, he acted in ways and addressed the court in a manner that no attorney would be permitted. For over a year, Mr. Pouncy abused the judicial process in this case. His motions, which by the court's count total over 160 individual matters, were often repetitive, frivolous, or intended to delay, yet this onslaught of motions still required many hearings to sort through and multiple continuances of trial. Even at trial itself, Pouncy's motions, objections, and failures to comply with court orders

---

*United States v. Cunningham*, 564 F. App'x 190, 194 (6th Cir. 2014) (considering disruption of trial).

necessitated significant time being devoted in the mornings and afternoons outside the presence of the jury to his untimely motion practice, to his baseless objections, and to his failure to cooperate with ordinary procedure. The misconduct here has spanned over a year of pretrial hearings, trial itself, and has dominated the court's time and resources beyond what could possibly be considered reasonable. The revocation of his right to represent himself was not a premature or quick reaction, but a decision taken by this court after significant thought and deliberation in an effort to control the courtroom, the trial, and its docket.

Mr. Pouncy's obstruction of court proceedings and abuse of the legal process is the worst the undersigned has encountered.[4] Mr. Pouncy has shouted the undersigned down in court, sworn at the court, and has interrupted the court, defense counsel, and the Government, repeatedly making it difficult to complete a sentence or attempt to manage the proceeding. He often refuses to answer questions directly and simply addresses a topic more to his liking. He frequently ignores

---

[4] The undersigned has served as a District Judge in the Eastern District of Michigan since December 22, 2022, and prior to that time, continuously served as a trial judge in the State of Michigan from May 2009 until December 2022.

court rulings moments after they are made and ignores instructions to wait until he is asked to speak. "The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). Like the defendant in *Allen*, Mr. Pouncy has demonstrated a blatant disregard for the rules by frequently interrupting and insulting this court.

But that is not all. While the defendant in *Allen* threatened to delay the trial, Mr. Pouncy several times made that threat a reality by causing numerous delays: threatening not to show up at the trial itself, refusing to leave the holding cell in the courthouse, refusing to dress himself or otherwise threatening to refuse to dress himself in the clothes provided by defense counsel, threatening his attorneys with physical violence, and by his actions during trial. Even after the court terminated his right to represent himself at trial, Pouncy persisted in interrupting the Government, his attorneys, the court, and the trial itself to add his own objections, arguments, or other prejudicial and inflammatory comments. When he took the stand in his own defense, his conduct was so obstreperous and so utterly dismissive of court

15

orders and basic procedure that the court was forced to take the unusual step of revoking his right to testify on his own behalf.  At times during his testimony (when outside the presence of the jury), Pouncy appeared to indicate that he was knowingly disobeying court orders in an effort to test how far he could push the limit before his right was revoked.  ECF No. 534, PageID.5593 (Pouncy: "I'm ready for you to tell them to take me out.  I'm just waiting on it.  Surprised you didn't do it already.").  When given a final warning, he again indicated he would continue to disobey court orders – which he then proceeded to do.  Mr. Pouncy has interrupted, spoken in undertones, spoken while others are speaking, shouted at the court or the attorneys present, and been disrespectful so frequently that the undersigned must question whether the record will fully reflect just how impossible it has been to carry on a hearing, or any part of trial, with Mr. Pouncy present in the courtroom. Maintaining orderly, efficient, and fair proceedings is difficult even while Mr. Pouncy is represented by two highly qualified attorneys; it is not possible with Mr. Pouncy representing himself.

As the court has elsewhere noted, Mr. Pouncy was amply warned on many occasions of the consequences of his actions, most particularly

in a lengthy warning given on the first day of trial. He was warned again when his conduct was approaching the point of no return, when he specifically violated court orders, and was informed of what kinds of specific conduct the court found risked waiving his right. *See* ECF No. 524, PageID.4233-37, ECF No. 525, PageID.4596, 4705, 4706. In an effort by this court to show more grace than was likely warranted under the circumstances, Mr. Pouncy was given multiple final chances and warnings in time to adjust course. In light of these warnings, his choice to stay his course and forfeit his right was "made with eyes open." *See Faretta*, 422 U.S. at 835.

"The Sixth Amendment guarantees fundamental protections but also imposes certain responsibilities on defendants who choose to represent themselves. Cooperation and respect in the courtroom are not mere formalities. They are necessary components of the judicial process." *United States v. Butler*, 117 F.4th 1309, 1319-20 (11th Cir. 2024). "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country." *Allen*, 397 U.S. at 343; *see also Vaughn v. Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985) (holding that misbehavior

17

amounts to an obstruction of the administration of justice if it "will interrupt the orderly process of the administration of justice, or thwart the judicial process").  This court cannot possibly be required to have limitless patience with Mr. Pouncy's antics, and the court is convinced, in consideration of the totality of his conduct over the past year, that his behavior would not improve if offered the opportunity to try again.  The "integrity and efficiency" of these proceedings strongly "outweighs the defendant's interest in acting as his own lawyer," which he forfeited by his own actions.  *See United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017); *cf. United States v. Gabrion*, 648 F.3d 307, 332 (6th Cir. 2011) ("we do not require the District Court to undertake the empty and time-consuming formality of granting his right to self-representation only to revoke it days later"), *vacated on other grounds,* 719 F.3d 511, 535 (6th Cir. 2013) (en banc).  Pouncy's right to self-representation was forfeited, and his request to resume self-representation is denied.

## III.   Retained counsel

With those findings in mind, Pouncy is left with two options: continuing with currently appointed counsel, or he may retain counsel – and the court turns once more to the issue of retained counsel.  The

court is not convinced that Pouncy's present motion is a credible assertion of the right to counsel of choice.  The court has elsewhere set out the history of attorney Harrell D. Milhouse purporting to appear in this case as a "retained" counsel, but when he was questioned by the court, he either withdrew his motions or materially modified those assertions such that he never actually appeared as retained counsel on Pouncy's behalf.  *See, e.g.*, ECF No. 469, PageID.3764 n.4, ECF No. 361 (detailing more of that history).  Yet Pouncy again claims Mr. Milhouse (or, perhaps, another attorney) will appear on his behalf as retained counsel.

The test for substituting an appointed counsel for retained counsel is considerably more lenient than substitution of appointed counsel, though again is not unlimited.  The Sixth Amendment guarantees "the right of a defendant who does not require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).  Deprivation of that right to choose retained counsel is structural error that does not require a showing of prejudice or that the counsel defendant received was ineffective.  *Id.* at 148.  But that right "is circumscribed in several important respects."  *Id.* at 144 (quoting

*Wheat v. United States*, 486 U.S. 153, 159 (1988)).  Among those limitations is the trial court's discretion "in balancing the right to counsel of choice against the needs of fairness" and "the demands of its calendar." *Id.* at 152; *see also Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).  A district court's decision to deny a motion to withdraw or for substitute counsel is reviewed for abuse of discretion. *See United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006); *United States v. Powell*, 847 F.3d 760, 777-78 (6th Cir. 2017).  "The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gonzalez-Lopez*, 548 U.S. at 152 (internal quotation marks omitted, citation omitted). However, "a trial court, acting in the name of calendar control[,] cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Wilson*, 761 F.2d at 281.[5]

---

[5] The court notes, for the record, that Mr. Pouncy made a statement on the first day of trial, which was not credible under the circumstances, that Mr. Milhouse was prepared to represent him at trial as retained counsel.  Given Mr. Milhouse's many prior opportunities to appear as retained counsel across the preceding months, and that this statement was made only as jury selection began and the jury pool was in the building, this motion was clearly untimely.  *See* ECF No. 469, PageID.3764-65; *see also United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (finding the timeliness of the motion weighed against defendant

The first and primary consideration is timeliness.  On the relatively limited record before it, the court is not prepared to say that this latest attempt to retain Mr. Milhouse is made solely for the purpose of delay.  With sentencing set for July, 2026, there is sufficient time to allow substitution of appointed counsel for retained counsel of choice.

But the court wishes to clarify for the record a few relevant points.  And in particular the court pays careful attention to its duty to ensure these proceedings are conducted within the "ethical standards of the profession."  *See Gonzalez-Lopez*, 548 U.S. at 152.  A number of concerns have arisen surrounding Mr. Pouncy's alleged legal work, his association with persons calling themselves "paralegals," and now Mr.

---

when he made the request "late in the proceedings" even though "he had several chances to raise the issue" earlier); *United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (request for substitution made one and a half months before trial untimely when the request could have been brought far earlier).  Substitution of counsel would also have, under the circumstances, undoubtedly delayed trial; Mr. Milhouse was not present in the courtroom and could not, as a practical matter, have stepped in at that time.  In addition, the court has detailed a number of its ethical concerns regarding Mr. Milhouse and his conduct in this case, and its many concerns regarding the truthfulness of statements made by Mr. Pouncy that Mr. Milhouse is in fact "retained" counsel at all.  *See* ECF Nos. 453, 469.  Without Mr. Milhouse present in the courtroom to verify Mr. Pouncy's assertion, Defendant's assertion that he had "retained" Mr. Milhouse was not credible in the first place. The needs of fairness, the demands of the court's calendar, the lack of credibility in Defendant's assertions, and the public's interest in the prompt administration of justice all strongly outweighed Defendant's interest in counsel of choice under the circumstances.

Milhouse's association with this kind of work, and in particular with Ms. Grant.

First, Mr. Milhouse allegedly employs a paralegal, Cortny Grant,[6] who herself has an intimate, non-professional relationship with Mr. Pouncy.  ECF No. 451-1, PageID.3441-52.  Ms. Grant frequently contacts the court, purportedly on behalf of Mr. Pouncy and Mr. Milhouse, using an email whose address claims that she is Mr. Milhouse's assistant (hdmilhouseassistant@yahoo.com).  It is unclear whether Mr. Milhouse is even aware of these communications, because he is often not copied on them by Ms. Grant, and her email, though labeled as "hdmilhouseassistant," is a Yahoo account that does not appear to be associated with an email server owned or operated by Mr. Milhouse.  Most notably, Mr. Milhouse has, on at least one occasion and possibly more, allowed Ms. Grant to file documents in this case without his knowledge or approval, with his signature on them, on behalf of Mr. Pouncy.  *See* ECF Nos. 453, 469 (not crediting Mr. Milhouse's post-hoc explanation for the filing).  This was a serious breach of Mr. Milhouse's duties as an attorney, and undermines this proceeding.  The frequent

---

[6] The record at times also refers to her as "Cortny Jones."  She uses "Grant" in her emails to the court's case manager, and the court uses that last name.

communications from Ms. Grant, combined with the occasions that the court has attempted to reach Mr. Milhouse but has been unable to reach him, does not inspire confidence that Mr. Milhouse is supervising or approving of Ms. Grant's communications to the court.

Second, zooming out a little, Ms. Grant is not the only individual identifying herself as a "paralegal" that Mr. Pouncy has sought to ensure he has unrestricted "attorney-client" contact with over the course of this case.  Mr. Pouncy's association with persons, such as Ms. Grant, who purport to be "paralegals" – but who have often never been proven to actually work as paralegals – has been an issue throughout this case.  Pouncy has allegedly communicated with Ms. Grant, with whom he has a personal relationship, using "attorney-client" channels, even when their communication is of a personal nature.  ECF No. 451-1, PageID.3441-52.  He previously attempted, in this same case, to gain confidential, attorney-client in person access to one Lonise Coulter, who the court never learned many details on, because the court refused to order confidential access to her without more information from Defendant.  ECF No. 191, PageID.1212; *see* ECF No. 225.  She is not the only such individual who has acted on Pouncy's behalf in that manner.

For example, it came out during trial that India Countryman, a potential witness in this case with whom Pouncy had a personal relationship, acted as a "paralegal" on his behalf.  *See* ECF No. 534, PageID.5567.  The government has introduced evidence (unrebutted by any evidence from Defendant, given several opportunities) that he used a prior girlfriend, Simone Penn, to contact another MDOC prisoner while on an "attorney-client" call.  ECF No. 83, PageID.408 (also noting that Penn called in using attorney David Moffit's number).[7]  Though little detail appears in the record, there are other similar individuals who have acted on Pouncy's behalf.  *See, e.g.*, ECF No. 83, PageID.405 (identifying a woman by the initials "C.R." allegedly working for Pouncy); ECF No. 391, PageID.3104 (identifying "C.R." as Clarissa Royster); ECF No. 83 at PageID.407 (identifying a Shantel Johnson as associated with this enterprise); ECF No. 228, PageID.1455 (sealed motion naming two additional "paralegals" allegedly willing to work for Pouncy, two additional "investigators," and one "runner" of his choice); *see also* ECF No. 230 (asking on the record for access to Coulter and a

---

[7] Pouncy also attempted to use a different designated phone number for another attorney (who he had never spoken to) to disguise his communications with non-attorneys.  *See* ECF No. 83, PageID.409 (the attorney was a law clerk for a federal judge and stated he did not know Pouncy or have any clients).

MarQuay Neeley).  Mr. Pouncy then uses their designation as "paralegals" or "legal" support staff to claim these individuals are members of his legal team and seeks court orders requiring his immediate custodian to allow Defendant to meet with them, with attendant attorney-client privileges.  *See, e.g.*, ECF No. 191 (Coulter); ECF No. 451, PageID.3394 (ruling on multiple motions relating to access to Grant).  But whether these individuals are only working on Mr. Pouncy's defense is unclear.  Mr. Pouncy for some time ran his own purported "legal" business, the "National Appellate Clinic" from prison, offering "legal" services to inmates in exchange for money — an arrangement that he has never fully explained.  *See National Appellate Clinic, LLC et. al., v. MDOC, et. al.*, Case No. 23-cv-10203 (E.D. Mich. 2023), ECF No. 4, PageID.17-18; *see also* ECF No. 83, PageID.407 (misconduct report from 2023 indicating Pouncy claimed to have at least $10,000 at his disposal at the time).  This "legal" enterprise is also a recurring theme in this case.  As Pouncy himself testified at trial, when he was out of prison he provided his former attorney David Moffitt with paralegal services in exchange for money, a car, and a house during the brief period he was released from prison.  ECF No.

528, PageID.5467-71.  When Pouncy was in prison, Moffitt gave Pouncy the number he used to call the jail for attorney-client matters, which in some way led to Pouncy's use of it to contact non-attorneys.  *See* ECF No. 83, PageID.408 (report indicating that "Attorney David L. Mofitt [] requested this phone call through the Bellamy Creek Warden's Office. [Another prisoner] calls . . . Simone Penn, the girlfriend of Prisoner Pouncy . . . .  Simone Penn then calls the direct number that is . . . designated for the calls between Prisoner Pouncy and his Attorneys only, not members of the public nor other Prisoners.  Simone Penn then links the call from Prisoner Davis directly to Prisoner Pouncy, thus making a 3-way call between Prisoners Pouncy, Davis, and Pouncy[']s girlfriend Simone Penn.").

Mr. Milhouse's present involvement raises questions of whether a similar arrangement is in force.  Mr. Milhouse and Mr. Pouncy alleged that Milhouse was going to be paid Pouncy in exchange for legal work that Mr. Pouncy would do.  *See* ECF No. 377, PageID.3038.  Another "paralegal" who worked for Mr. Milhouse, Arrelle Nason, and who according to Mr. Milhouse worked "predominantly" on Mr. Pouncy's case, is in fact Mr. Pouncy's business partner for an enterprise allegedly

intended to connect women with inmates and for inmates to broadcast information about the people who "ratted" on them.  *See* ECF No. 367. For reasons unknown to the court, Mr. Milhouse and Mr. Nason parted ways.  Ms. Grant, meanwhile, while working for Mr. Milhouse, has attempted to contact Pouncy using "attorney-client" privileged calls as explained above.  Whether Mr. Pouncy's "National Appellate Clinic" is a real entity, and whether it exists or existed to do anything except to funnel money to Mr. Pouncy, is unclear.  *See* ECF No. 428-1, PageID.3283-84.  These parts of the record raise ethical flags that warrant scrutiny.

Third, although Mr. Pouncy at times claims to seek to control costs in his case, or argues that he is merely asserting his constitutional rights to a defense team, what he has sought in reality has been to direct public funds to individuals of his choosing, regardless of their qualifications.  *See, e.g.*, ECF No. 451, PageID.3394, 3424; ECF No. 292, PageID.2038-39; ECF Nos. 248, 228.  It is hard to shake the strong impression that Mr. Pouncy's intention throughout this case has been to use his defense, and motions related to funding his defense, to funnel public funds to himself, to persons he is personally connected to, or to

enterprises he controls, for purposes unconnected and unrelated to his constitutionally protected rights. The record supports that Mr. Pouncy has, in fact, misused or misappropriated public funds that were indirectly provided to him in this case, and which were intended for attorney-client communication, and then sought additional funds to be given directly to him. ECF No. 451, PageID.3418, 3424. Pouncy has misused other public resources given to him for the purposes of pursuing his "legal" enterprises. ECF No. 428-1. Pouncy has also sought access to materials that, according to officers of the court, are pornography – all while claiming that these are legal materials essential to his defense. *See, e.g.*, ECF No. 524, PageID.4523-24. This is all relevant here because Mr. Milhouse has at every step indicated that, should he step in as retained counsel, he will seek funds for different "support staff," which will presumably be individuals of Pouncy's choosing (Pouncy has always stood by his position that he is entitled to select all members of "his" defense team). *See* ECF No. 357 (Milhouse moving for replacement of all court-appointed staff with Arrelle Nason and two other individuals); ECF No. 228, PageID.1455 (Pouncy's motion claiming that "Defendant now in the capacity as

counsel of record must be allowed to select who is chooses to receive aide [sic] from" and seeking public funds to be paid to six individuals of his choosing).  Mr. Milhouse, by the fact of employing Ms. Grant and Mr. Nason, and filing motions seeking public funds to be provided to them, has shown a remarkable unwillingness to assert his own professional judgment over that of Mr. Pouncy.  And thus Defendant Pouncy would very likely seek to get around this court's prior orders carefully circumscribing his access to unidentified or unvetted individuals and property for purposes that are in all likelihood unrelated to the substance of his criminal defense.

Taken together, these points add up to a concerning picture of Mr. Milhouse's participation in this case.  The court is not at all convinced that Mr. Pouncy has been forthright with the court about his relationship, professional or otherwise, with Ms. Grant.  Despite Mr. Pouncy's alleged indigency, the court is not convinced that Mr. Pouncy has been honest about his or his family's financial resources, which appears to change based on the nature of the relief he seeks.  *See, e.g.*, ECF No. 526, PageID.4800 (claiming his family currently has funds they are willing to use to retain counsel); *see also* ECF No. 181,

PageID.1155 ("Up until around the end of September of last year, Defendant was able to (with financial support from family and friends) compensate Ms. Coulter for her assistance.  However, those funds have been depleted . . . .").

Ms. Grant, for her part, has also lost much credibility.  Her personal relationship with Pouncy, and her lack of transparency about that fact prior to its disclosure, of course colors her credibility.  But even looking just at the facts she asserts, her statements to the court have inconsistencies that cannot easily be explained.  It appears to the court that Ms. Grant was not truthful in her sworn testimony before the court regarding her work for Mr. Milhouse and Mr. Pouncy.  In particular, Ms. Grant previously filed a sworn declaration that in 2024, she was contacted by an attorney (not Mr. Milhouse) regarding this case to act as a Digital Forensic Investigator.  ECF No. 405, PageID.3153.  She stated that she worked on this case for that attorney prior to Mr. Quinn being brought on board.  *Id.*[8]  But when later questioned by the court, in-person and under oath, the court asked Ms. Grant how long she had been working for Mr. Milhouse.  She stated she had worked for Mr.

---

[8] Mr. Quinn came on board in December 2024, so her timeline places her working on this case in 2024.  *See* ECF No. 147 (appointing new attorney).

Milhouse for about a year (thus starting approximately March 2025). ECF No. 523, PageID.4218. And the court then asked whether her "initial association" on this case was "with Mr. Milhouse or was your initial association with Mr. Pouncy?" *Id.* Grant replied, "Mr. Milhouse. Attorney Milhouse." *Id.* But if Ms. Grant was earlier telling the truth that she started work on Pouncy's case for another attorney in 2024 – and it does seem to be the case that she did (*see* ECF No. 407, PageID.3160, Pouncy's motion indicating just that) – then her later testimony that she first worked for Attorney Milhouse before working on Pouncy's case was seemingly not true. That inconsistency renders her testimony and sworn statements incredible, and begs the questions of who, in fact, directed that prior attorney to reach out to Ms. Grant in the first place, and why she was not forthright regarding these issues.

And so, turning to Mr. Milhouse, the court is not convinced that Mr. Milhouse has been candid with the court about the details of his agreements with Mr. Pouncy, given that Pouncy alleges Mr. Milhouse is now ready, willing, and able to appear as retained counsel on his behalf despite the history of Mr. Milhouses's prior involvement in this case. (And because the court had other concerns about Mr. Milhouse's

31

conduct in this case, it referred him both to the Michigan Attorney Grievance Commission and to the Chief Judge of this district for investigation and possible disciplinary proceedings). The court is not convinced that Mr. Milhouse, if he requests public funds to be paid to individuals not currently on the "payroll," as his prior statements indicate he will, do any due diligence in vetting these individuals. And the court is, at the very least, concerned that Mr. Pouncy will abuse his attorney-client relationship with Mr. Milhouse, and in particular the privileges of attorney-client communication channels and legal materials, to manipulate the judicial process using individuals claiming to do legal work for Mr. Milhouse.

Given the lack of guidance from the Sixth Circuit on a matter like this, and in light of the high respect the constitutional right to counsel of choice is accorded, the court is hesitant to restrict Defendant's right to retain his counsel of choice based only on these ethical concerns. The court can, of course, carefully vet any requests for additional CJA funds itself and decline to approve new individuals. It can inquire further into the financial relationship between Pouncy and retained counsel in order to ascertain if funds are available to reimburse some of the

32

expenses paid in this case.  And the court, as part of its inquiry into what resources are available to allow Pouncy to obtain retained counsel or to reimburse the court for services paid for already, can investigate Defendant's fee arrangement with retained counsel, Defendant's finances, and any and all external sources of funding, which may shed some light on the court's questions.[9]  So at this time, the court will allow retained counsel to appear if such appearance is filed within 14 days of entry of this order, as retained counsel.  Given that sentencing is presently set for July, 2026, this should not require any extensions of time.

But in light of the history of Mr. Milhouse's participation in this case, the court is also concerned that this represents just one more attempt by Defendant, in a long line of examples, to delay this case and to manipulate the fair and efficient administration of justice.  Most

---

[9] If "[a] defendant's financial circumstances [] change or conflict with earlier reports about [his] ability to pay," *Brown v. United States*, 716 F. App'x 488, 492 (6th Cir. 2017), the court should conduct a "thorough inquiry into the defendant's finances[.]" *See United States v. Wilson*, 597 F.3d 353, 358 (6th Cir. 2010).  In evaluating a defendant's inability to pay for purposes of the CJA, the court may consider, and conduct an inquiry into, external funding sources. *See United States v. Quinlan*, 223 F. Supp. 2d 816, 818 n.1 (E.D. Mich. 2002); *United States v. Bennett*, No. 3:07-CR-81, 2008 U.S. Dist. LEXIS 6949, at *9 (E.D. Tenn. Jan. 30, 2008); *United States v. Bayer*, 1989 U.S. Dist. LEXIS 3479, 1989 WL 31017, at *1 (N.D. Ill. March 28, 1989); *United States v. Martinez-Torres*, 556 F. Supp. 1275, 1279 (S.D.N.Y. 1983).

relevantly, the court is concerned that if Mr. Milhouse (or any other attorney) refuses to file even one of Mr. Pouncy's many frivolous and dilatory motions, or argues such a motion in a way Mr. Pouncy disapproves of, that he will be immediately fired as retained counsel and Mr. Pouncy will seek to proceed *pro se* or seek to have new counsel appointed via a back-door manipulation of the trial process. *See United States v. Clark*, 328 F. App'x 992, 999 (6th Cir. 2009) ("because Clark's disagreement with counsel stemmed from his desire to file additional motions, substituting counsel on that basis would have thwarted the prompt and efficient administration of justice where substitute counsel would have most likely agreed with present counsel that Clark's motions would be fruitless."). Because of these concerns, and with deep appreciation for defense counsels' time and effort in this case, the court will not permit Mr. Bajoka or Mr. Quinn to withdraw even if a retained attorney files an appearance in this case and takes over Pouncy's defense. Mr. Quinn and Mr. Bajoka shall, in that instance, be permitted to immediately cease their efforts to represent Defendant as counsel of record (i.e. substitution of counsel shall be effective upon the notice of appearance of retained counsel), but their own appearances in

34

this matter will not be terminated and they shall remain on standby in the event that retained counsel's representation is terminated for any reason. As the court has warned Mr. Pouncy, he will not be permitted to further delay these proceedings.

The court notes again that Defendant's allegation that he has managed to retain counsel on a paid basis raises a "serious question" as to whether Defendant is actually unable to pay for any of the considerable public resources that have been expended on his behalf, some of which he has misused or misappropriated. *See Brown v. United States*, 716 F. App'x 488, 491 (6th Cir. 2017) (citing *United States v. Iles*, 906 F.2d 1122, 1134 (6th Cir. 1990)). Pouncy claimed at one point during trial that his family has sufficient resources to retain Mr. Milhouse, and has done so. Whether that is the case or whether funds are available from another source, the court may require that some of the resources being directed toward Mr. Milhouse, if any, be redirected to reimburse the court. *See* Guide to Judiciary Policy Vol. 7A, § 210.40.50 (if a defendant's family indicates their willingness to pay all or part of the costs of counsel, the court "may inquire into the financial situation of the person's" family and "may direct deposit or

35

reimbursement" for services under the CJA) (emphasis added); *United States v. Bayer*, 1989 U.S. Dist. LEXIS 3479, 1989 WL 31017, at *1 (N.D. Ill. March 28, 1989) (in analyzing whether the defendant has met his burden of demonstrating financial inability, courts consider "funds given to the defendant by others for limited purposes only, . . . availability to the defendant of income earned by a spouse or . . . other source, and the credibility of the defendant's representations as to his financial affairs") (citations omitted); *United States v. Martinez-Torres*, 556 F. Supp. 1275, 1279 (S.D.N.Y. 1983) ("Financial inability includes an inquiry into whether there is available to defendant funds for his defense from other sources such as family, friends, trusts, estates, or defense funds.").

And the court warns again that it will not step in to rescue Mr. Milhouse, or any other retained counsel, from the consequences of a poorly considered retainer agreement. *See* ECF No. 361, PageID.2874. "The Criminal Justice Act is not a form of federal fee insurance guaranteeing payment to counsel for the failure of his retained client to honor a fee agreement." *United States v. Rodriguez-Baquero*, 660 F. Supp. 259, 261 (D. Me. 1987) (citing *United States v. Thompson*, 361 F.

36

Supp. 879, 887 (D.D.C. 1973)).  If Mr. Milhouse, or another counsel, moves to withdraw on the basis that their fee agreement is not being honored, or that they require financial resources to represent Mr. Pouncy that are not available, that too will result in Mr. Bajoka and Mr. Quinn stepping back in.

Mr. Milhouse – or any other attorney – shall have **fourteen (14) days to file an appearance in this matter** from the date of entry of this order.  Should a retained attorney fail to file an appearance in that time, no extensions will be granted and appointed counsel will continue in their role.  This is because any late request will be deemed untimely under the circumstances.  Defendant has had ample opportunities to retain counsel and for that person or persons to file an appearance well before this stage of the proceedings.

The court's prior order prohibiting Mr. Milhouse from filing papers in this matter (ECF No. 469) will be modified to reflect that if he first files an appearance as retained counsel (without qualifications or reservations), then he may resume filing papers in this matter.

**If Mr. Milhouse, or any other attorney, files an appearance as retained counsel, they shall have 14 days to file any other**

**motions on Defendant's behalf**, not including objections to the presentence report.

## IV.   Withdrawal of plea

Finally, the court notes that after Mr. Pouncy entered his plea, the court set a 14-day deadline for any motions.  Mr. Pouncy appears to believe that a motion to withdraw his plea was excluded from that deadline, which the court does not agree with.  *See* ECF No. 543, PageID.5800 (indicating he will, at some undefined future moment, file a motion to withdraw his plea).  After setting the date for sentencing, the court stated: "If there is any motions that are filed, . . . I would ask if there are any such motions, that they be filed in the next 14 days.  I don't want to get to the day before sentencing and have, you know, yet again a whole pile of stuff filed the day before sentencing, or the day before the next hearing.  It just makes everything very difficult and chaotic."  ECF No. 538, PageID.5698.  The court repeated: "So if there are going to be motions, I'd like them within the next 14 days."  ECF No. 538, PageID.5699.  Those statements made clear that any presentencing motions (the "whole pile of stuff," not just motions regarding counsel) needed to be filed within that 14-day timeframe

38

(excluding matters that naturally arise later, such as objections to the presentence report).

Construing his *pro se* motion generously, however, Pouncy makes arguments for withdrawal of his plea in his present motion, which was postmarked within that motion deadline. First, he argues that he was misled by counsel regarding his guidelines calculation. Second, he says he was never informed what the guideline is for the fine associated with his offense. Third, he says counsel misled him as to how many elements are in a reliance on counsel defense. Fourth, he says counsel told him they would not object to portions of a government witness' testimony, and that led to his plea. And finally, he says counsel did not interview any of his witnesses, and so their advice for him to plea was defective. ECF No. 543, PageID.5797-800.

The first problem with this attempt to withdraw his plea relates to the rest of his motion; Pouncy is represented by counsel, who have refused to adopt or present his arguments regarding withdrawal of his plea. *See* ECF No. 543, PageID.5800. The court can thus strike or otherwise refuse to consider his motion, even so construed. *See United States v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987) ("whether to allow a

defendant to participate in his own defense along with counsel in 'hybrid representation' is a matter committed to the sound discretion of the trial court") (quoting citation omitted).

Because Defendant's exact status of counsel is somewhat up in the air, the court finds that the status of this matter should be deferred until that issue is resolved. **Should retained counsel appear, they shall have 14 days** from their notice of appearance to file a notice adopting this motion's arguments regarding plea withdrawal, else the motion (so construed) will be denied as a form of hybrid representation (or counsel may instead, as indicated above, file their own motion to withdraw his plea on the same or different grounds within 14 days of their appearance). **If retained counsel adopts the motion or files their own motion, the government shall have seven (7) days to file a response**. The court recognizes this is an abbreviated briefing schedule, but seeks to keep this case firmly on track for the scheduled sentencing date. This abbreviated response briefing schedule will also apply to other presentencing motions filed by retained counsel. The Government should apply for an extension if this becomes infeasible.

40

**If retained counsel does not appear within 14 days**, and Pouncy thus remains represented by appointed counsel, the court prefers out of an abundance of caution to address this matter on its merits, and the Government shall file a response to the motion, construed as a motion to withdraw plea in the manner explained above, within 21 days of entry of this order.

## V. Conclusion

In sum, for the reasons stated above, it is **ORDERED** that:

(1) Defendant's motion to substitute appointed counsel or to proceed *pro se* is **DENIED**.

(2) Defendant's motion to permit him to substitute retained counsel is **GRANTED** to the extent that **any retained counsel must file an appearance within 14 days of entry of this order**.

(3) Construed in part as a motion to withdraw his plea, the motion is **HELD IN ABEYANCE** pending resolution of Defendant's counsel.

(4) **If retained counsel does appear** within 14 days, they shall have 14 days from the date of their appearance to adopt, modify, or file their own motion regarding withdrawal of Defendant's plea, else the motion so construed will be denied as a form of impermissible hybrid representation.

    a. If retained counsel appears within 14 days, retained counsel shall also have 14 days from the date of filing

their appearance to file any other presentencing motions on Defendant's behalf.

  b. The government shall have 7 days to file a response to retained counsel's motions so filed, or to any motions adopted by retained counsel.

  c. Retained counsel shall have 7 days to file replies.

(5) **If retained counsel does not appear** within 14 days, the Government shall file a response to the motion (ECF No. 543), construed as a motion to withdraw his plea, within 21 days of entry of this order.  The Government shall ensure, in this scenario and as to this motion specifically, that Defendant is personally mailed a copy of their response.  Defendant shall have 7 days to file a reply.

(6) Even if retained counsel files an appearance within 14 days, **appointed defense counsel shall remain on standby** and shall remain prepared to resume representation of Defendant, including appearing at the sentencing hearing.

(7) The court's prior order prohibiting Mr. Milhouse from filing papers in this matter (ECF No. 469) is **MODIFIED** to reflect that if he first files an appearance as retained counsel (without qualifications or reservations) within 14 days of entry of this order, then he may resume filing papers in this matter.  That order (ECF No. 469) otherwise stands.

  **SO ORDERED**.

Date: May 6, 2026                         s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge